EXHIBIT A

## Question Presented

Whether this Court must annunciate a rule that applies the presumption of prejudice and hearing requirements of Mattox v. United States, 146 U.S. 140 (1892), Remmer v. United States, 347 U.S. 227 (1954), or Smith v. Phillips, 455 U.S. 209 (1982) to any case involving credible evidence of an extraneous influence on the proceedings, whether directly affecting the jury deliberations, or otherwise affecting the trial, as in this case, with the lawyer being affected by information communicated to him through court staff from the jury, in order to preserve the integrity of the proceedings?

Suggested Answer in the Affirmative

# Table of Contents

## Basis for Jurisdiction in This Court

This Court has jurisdiction of this matter, as it is filed within 90 days of the Memorandum and Order of the United States Court of Appeals for the Third Circuit dated December __, 2015.  A motion for Panel Rehearing/Rehearing En Banc was filed and denied by that Court on January __, 2016.

The case is an appeal from a denial of a motion under Fed. R. Civ. P. 60(b) filed in an action under 42 U.S.C. § 1983 raising claims of discrimination, and related violations, under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## Rules Involved in This Case

Fed. R. Civ. P. 60(b)(6) is the only Rule directly involved in this case, and it provides as follows:

## Concise Statement of the Case

The underlying case in this matter involved the selective enforcement of local government ordinances against residents of the municipality of Indian/Hindu descent. The case went to trial, and, after a 5-day trial, a verdict was returned against the Plaintiffs, despite, Plaintiffs contend, overwhelming evidence to support their claims.

The Plaintiffs trial counsel terminated his representation of the Plaintiffs immediately after the trial, and the Plaintiffs were forced to file their post-trial motions under Rules 50 and 59 *pro se*, and the entire file had not been returned to the Plaintiffs at the time their motions were filed. Plaintiff's trial counsel was paid hourly, and not under any contingency fee agreement. The post-trial motions were denied, and an appeal was taken to the Third Circuit, which was also denied, and the jury verdict allowed to stand. The post-trial motions, and appeal raised issues of improper jury contacts, but these were not addressed in any substantive fashion by the district court or the Third Circuit, being rejected as "speculative."

After a colorectal surgery right after the Nov 2013 trial, the Plaintiffs were unable to lift heavy boxes with the case documents, therefore, could not locate the handwritten notes of their counsel concerning the most significant aspect of the jury contact. Those notes, which were attached to the filings in the courts below,

included statements that: "[t]he jury is telling staff that they believe Underhill [the Defendants' attorney] is wasting their time; I will ask very few questions on cross" and "[t]he jury is growing impatient.  I don't want them to blame us for how long this trial is taking; I will do a longer cross of Karen like I did with Jeff and John."

The Plaintiffs raised in their original trial that the Defendants' Counsel failed to produce six witnesses who were agreed to be produced, and who Plaintiffs submitted were critical witnesses in their case, and that their Counsel failed to take any action to compel the appearance of these witnesses at the trial.  The Plaintiffs also argued that their Counsel failed to introduce about a dozen exhibits that they Plaintiffs also believed were crucial to their case, but the Plaintiffs could not locate these handwritten notes at the time their original post-trial motions were filed, due to a most recent colorectal surgery and resulting inability to lift heavy boxes, and, being forced to represent themselves *pro se*, did not have a recollection of the significance of these matters in the context of the applicable case law. [1]

---

[1] While the Plaintiffs did not cite this case law then, under the principles of holding the *pro se* filings to "less stringent standards", Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); the Court should work to assure that any ignorance of law or procedure does not result in an unjust decision; and should not penalize good-faith errors.  Implicit in the right of self-representation is an obligation on the part of any court to make reasonable allowances to protect *unrepresented litigants* from inadvertent forfeiture of important Rights because of any lack of formal legal training. See Traguth v. Zuck, 710 F.2d 90, 95 (2nd Cir. 1983); Hoffman v. U.S., 244 F.2d 378, 379 (9th Cir. 1957); Darr v. Burford, 339 U.S. 200 (1950).

After finding these notes, and researching the significance of these issues, the Plaintiffs filed an additional motion under Rule 60(b)(6) asserting that the district court should hold a hearing under the holdings of this Court under Mattox v. United States, 146 U.S. 140 (1892), Remmer v. United States, 347 U.S. 227 (1954), and Smith v. Phillips, 455 U.S. 209 (1982), and additionally asserting under the facts and circumstances that the conduct of their Counsel also amounted to the "virtual abandonment" of their representation under Carter v. Albert Einstein Medical Center, 804 F.2d 805 (3d Cir. 1986).

The Rule 60(b) motion filed by the Plaintiffs raised the serious question as to whether the court staff's improper communication to the Plaintiffs' Counsel improperly influenced his handling of their case, such that the verdict of the jury was inherently unreliable, and raised the issue that the district court should have held a hearing on this matter, under the standards set forth in Mattox, Remmer, and Phillips. The district court denied the Plaintiffs' Rule 60(b) motion, scarcely even addressing the issue, and just passing it off as "speculative." The district court failed to even recognize or cite these long-standing Supreme Court precedents in its decision.

The Third Circuit also failed to even cite the precedents of this Court that are clearly applicable in this case, and, even upon rehearing, neglected to address these very serious issues that impact upon the integrity of the jury trial process. Again,

the Third Circuit passed the matter off as "innocuous," and completely avoided the real issue in the case.

The Petition for Panel Rehearing/Rehearing En Banc is produced herewith, as setting forth the nature of the issues. The courts of this country must give better regard for the precedents of this Court, and the integrity of the jury process, than has been done in this case.

.

## Reasons Why Certiorari Should be Granted

Certiorari should be granted in this case so that this Court can make a clear statement, and establish clear expectations on the lower courts to preserve the integrity of the jury trial process in the federal courts, such that issues that have occurred in this case do not continue to occur in the future. It is, as the Third Circuit has stated, understandable that trial court staff does have communications with jurors, and it is understandable that those communications may, at times, relate to impressions that the jurors have on the merits of the case or the nature of the proceedings. It is unacceptable, however, for these matters to be communicated to Counsel in the case, as exactly what happened in this case is the danger that can and will continue to occur should these matters proceed without this Court setting forth a clear rule to guide the federal courts in the future, and preserve the integrity of the jury trial process.

There is some confusion as to exactly what the cases of <u>Mattox v. United States</u>, 146 U.S. 140 (1892), <u>Remmer v. United States</u>, 347 U.S. 227 (1954), and <u>Smith v. Phillips</u>, 455 U.S. 209 (1982) even require, and the fact that neither the district court in this case nor the Third Circuit even cited these cases, or recognized their import, shows just how important it is for this Court in this case to revisit this issue, and establish a clear rule that is applicable not just to the situation where extraneous matters invade the process of jury deliberations, and affect the result in

that sense, but where any extraneous matters involving communications

concerning the jury become part of the trial process, as clearly happened in this

case.

In this case, there is direct evidence, in the form of the handwritten notes of

the Plaintiffs' Counsel, that communications regarding impressions of the jury

impacted upon how the case was handled. There is no dispute about that, and there

is nothing innocuous about it; the only reason that the lower courts in this matter

could have looked right past these issues is out of a concern for the preservation of

their relationships with their court staffs, i.e., they have more loyalty and fidelity to

the court employees who staff the courts in this country, than they have to the

constitutional right of the parties to an unemcumbered jury trial process, free of

any extraneous influence that deprives them in any way of their "day in court,"

which is the entitlement of every American bringing a case in the courts of the

United States.

The remedy under the applicable precedent, as enunciate in <u>Remmer</u> is a

hearing to determine whether the presumption of prejudice can be rebutted.  It

applies in both criminal cases, and civil cases under Section 1983.  <u>Hayley v. Blue

Ridge Transfer Co. Inc.</u>, 802 F.2d 1532 (4th Cir. 1986).  In Remmer, the Court said:

> any private communication, contact, or tampering directly <u>or</u>
> <u>indirectly</u> (emphasis added), with a juror during a trial about the
> matter pending before the jury is, for obvious reasons, deemed

presumptively prejudicial if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily (emphasis added) upon the [party who benefitted from the jury verdict] to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.... [and that] [t]he integrity of jury proceedings must not be jeopardized by unauthorized invasions. The trial court should not decide and take final action *ex parte* on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.

In the Hayley case, the Court went through the proper analysis of how such matters should be addressed, including the holding of a hearing, and including the recitation that the party seeking to uphold the verdict in the face of an improper jury contact bears a "heavy burden" of overcoming the presumption of prejudice. The Court reversed the jury verdict and remanded the case for a new trial.

The same result was reached in Rinker v. County of Napa, 724 F.2d 1352 (9th Cir. 1983), a case, like the present and Hayley, under Section 1983, where the Court remanded the case back to the district court, even after the district court made some inquiry into the issue of improper jury contact, for a new trial.

The panel's failure to even cite to the cases of Mattox v. United States, 146 U.S. 140 (1892), Remmer v. United States, 347 U.S. 227 (1954), or Smith v. Phillips, 455 U.S. 209 (1982) cannot be excused. These cases prescribe the

burdens that are imposed, and the responsibilities of the courts when confronted

with the type of improper contact that was established to have occurred in this

case. The lower court should have recognized that a presumption of prejudice

applies based upon the contact, and then should have held a hearing on the matter

before making any decision on the Appellants' Rule 60(b)(6) motion. There is no

dispute under the pronouncements of the United States Supreme Court that this is

exactly what should have been done, and, again, the lower court's failure to even

cite these cases simply cannot be justified in any honest way.

There is expressed confusion in the Circuit courts over the meaning and

importance of these cases, and this Court must clarify any confusion that exists,

and set down a rule that applies these holdings to any extraneous communications

involving a jury.

In Barnes v. Joyner, 751 F.3d 229 (4th Cir. 2014), the court stated that "we

have recently observed, 'there is a split among the circuits regarding whether

the *Remmer* presumption has survived intact following' the Supreme Court's

decisions in Smith v. Phillips, 455 U.S. 209 (1982), and United States v. Olano,

507 U.S. 725 (1993). See also United States v. Lawson, 677 F.3d 629, 643-44 (4th

Cir. 2012) (describing the circuit split).

In cases under Section 1983, it is recognized that party is entitled to a

hearing when the defendant presents a credible allegation of communications or

contact between a third party and a juror concerning the matter pending before the

jury.  See Haley v. Blue ridge Transfer Co., 802 F.2d 1532 (4th Cir. (1986).

In  Stouffer v. Trammel, 738 F.3d 1205 (10th Cir. 2013), the court recognized

"[t]he trial court's duty to conduct a *Remmer* hearing when genuine concerns of

improper juror contact arise is clearly established by the Supreme Court").  These,

are understandably matters of due process, and "[d]ue process means a jury

capable and willing to decide the case solely on the evidence before it, and a trial

judge ever watchful to prevent prejudicial occurrences and to determine the effect

of such occurrences when they happen.  See Barnes.  This is why hearings are

required.  The requirement that a trial court conduct a hearing to determine juror

partiality is rooted in the Constitution.

There appears to be some confusion, however, as to what meets the

threshold of requiring such a hearing.  In Haley, 802 F.2d at 1537, n.9, the court

said that "certain kinds of extrajudicial contacts may amount to nothing more than

innocuous interventions that simply could not justify a presumption of prejudicial

effect").  In Wiseheart v. Davis, 408 F.3d 321, 326 (7th Cir. 2005), the court stated

that a *Remmer* hearing is required when "the extraneous communication to the

juror [is] of a character that creates a reasonable suspicion that further inquiry is

necessary to determine whether the defendant was deprived of his right to an

impartial jury".  In Stouffer v. Trammel, 738 F.3d 1205 (10th Cir. 2013), the court

stated held that "[w]hen a trial court is apprised of the fact that an extrinsic influence may have tainted the trial, the proper remedy is a hearing to determine the circumstances of the improper contact and the extent of the prejudice, if any, to the defendant."

Under Stouffer, therefore, it is clear that the matters are not limited to issues affecting jury deliberations, but relate also to any matter that "may have tainted the trial." (emphasis added). That is what happened in this case.

The lower court and this Court tried to minimize the character of the communication, i.e., that it was an "innocuous" contact between the jury and the court staff, which may well be true if that is where it ended, i.e., if it was just the jury communicating frustration with the pace of the trial to the court staff, but that is not where it ended, and the real harm came when that information was communicated to Attorney Autry. This is every bit the type of improper jury communication communicated in any of the other cases, because it breached the roles of the jury and the parties, and interfered with the independent roles each serves in the jury system. As the Remmer court stated it can either be direct or indirect contact.

Moreover, despite the presumption of prejudice that applies, the Plaintiffs are not simply speculating that this otherwise "innocuous" contact may have had some theoretical impact on the proceedings; the Appellants pointed to actual

evidence, in the handwritten notes of their Counsel, that this information did have a direct impact upon the proceedings in that Appellant's Counsel made a strategic decision to limit his examination based upon that improperly communicated information – the evidence of this was placed before the lower court, and before this Court, and it violates the Appellants' due process rights for the Court to have dismissed the significance of this evidence without directing that the required hearing be held.

In addition to the handwritten note, the Appellants point to additional evidence of actual prejudice. There were 6 witnesses who were subpoenaed to give testimony in this matter who were not called to testify by Attorney Autry. Some of these witnesses gave depositions in the case, and Appellants submit, had they been called in this case, they all would have further bolstered the Appellants' claims that Indian and other non-minority residents of East Pennsboro Township were systematically treated less favorably than the non-minority residents. In addition, by failing to call the policymakers at the time of trial, the Appellants were prejudiced in their ability to make out their Monnell claims against the Township. In addition, as the panel did point out, this is not the only evidence of improper jury contact in this case. There was the one matter that was brought to the attention of the lower court about the brief encounter involving Appellants' Counsel and more than one potential jurors arriving at the Courtroom using the

same elevator on the first day when the jury selection was done.  Despite the fact these potential jurors had no verbal interaction with any counsel and no knowledge about the facts of the case, Counsels demanded for removal of these jurors in an attempt to impress and blindfold the Trial Judge with their "honesty", but there were more serious matters that should have been brought forth, and which were mentioned by the Appellant in his various filings, about gestures being made between Counsel for the Appellees and at least one juror, including comments on a football game were completely covered up.  Appellants also submit that this juror who had improper contact with Appellees' Counsel outside the Courtroom and was impatient to allow fair trial time to present their case should have been removed as there were more than one standby jurors.

While, again, standing alone, these may not have been prejudicial on their face, in the context of the much more severe issue of the information and frustrations expressed by the jury being communicated to Appellants' Counsel, it is clear that there were things that occurred that affected the integrity of the proceedings, and that may well have, and Appellants submit did, prejudice their right to a fair and impartial jury.  All of these things should have been inquired into at the time of the required hearing that the lower court never had, and that the Third Circuit Court did not even mention.

The matter of the "virtual abandonment" of the case by Attorney Autry is a separate issue, or, at least, an issue that was not essential to the issue of the improper jury contact, i.e., the matter of the improper jury contact, which was the first issue raised and argued by the Appellants, stands on its own, any issue of "virtual abandonment" aside, and justifies the relief that the Appellants requested. That relief, which should have been directed by the Third Circuit Court, should have been to remand this matter to the lower court to hold the hearing that it is required, as a matter of Supreme Court precedent to hold. The lower courts cannot just ignore the precedents of the United States Supreme court, and the presumption of prejudice that it dictated, and the requirement that a hearing be held, and that the Appellees, who were the beneficiaries of the verdict in the court below, come forward, and show evidence to rebut that presumption, and to show that there was no prejudice.

The lower courts skipped right over all of that, and also skipped right over the evidence that the Appellants submitted showing actual prejudice, then justified the lower court's decision in complete ignorance of what the law requires under the circumstances. It is absolutely unjustifiable, and a complete abnegation of the Third Circuit Court's appellate review responsibilities.

The "virtual abandonment" issue, which was all that the lower courts really focused on, should, nonetheless, be given consideration in the context

of the improper jury contact issue.  The Appellant's attorney, who was being paid hourly, with no contingency incentive, compromised the handling of the Appellant's case based upon the information improperly communicated to him from the jury, then failed to bring that to the attention of the court, despite the Appellants' requests.  He then dropped the Appellants as clients immediately after the trial, not even assisting them through the post-trial process.  He failed to call important witnesses, failed to put on material documentary evidence, and, even though he did handle the case for a few months, and attend the trial, the evidence is still sufficient to establish his virtual abandonment of the Appellants.  See Carter v. Albert Einstein Medical Center, 804 F.2d 805 (3d Cir. 1986); Boughner v. Secretary of Health, Education & Welfare, 572 F.2d 976 (3d Cir. 1978).

The allegations of this Petition clearly establish that the memorandum and order of the panel were entered in grave error that violated the well-established precedents of the United States Supreme Court, and the courts of other federal circuits.  The panel did not just err analytically, it appears to have wholly disregarded, even deliberately disregarded, these issues for unknown purposes, but for purposes that fly in the face of their duty to conduct appellate review with fidelity to the Constitution, and the citizenry who they serve.

Respectfully Submitted,

Gnana M. Chinniah, Plaintiff, *Pro Se*

SuganthiniChinniah, Plaintiff, *Pro Se*

506 Erford Road
Camp Hill, PA 17011
Home Tel: 717 732 6273
Email: chinniahg@hotmail.com

Date:

EXHIBIT B

No. 15-2911

## IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

### Gnana M. and Suganthini Chinniah
### Plaintiffs/Appellants

v.

### East Pennsboro Township and Jeffrey Schultz
### Defendants/Appellees

## PETITION FOR PANEL REHEARING/REHEARING EN BANC

1. By Memorandum and Order dated December 21, 2015, this Court dismissed the appeal in this matter, affirming the Judgment of the Middle District denying Appellants' Motion to Open Judgment.

2. This matter involves an issue of exceptional importance insofar as it relates to the integrity of the province of the jury to be unhindered by improper contacts with the parties, and, in this case, the Court, as communicated to the parties, that affects the outcome of the proceedings, and undermines the entire process. Rehearing is warranted in this case for this Court to adopt and enunciate the requirements in this Circuit to be in accord with the pronouncements of the United States Supreme Court, and the holdings of the other circuits, for dealing with matters that affect the integrity of the

proceedings of the jury. The panel in this case wholly ignored those requirements.

3. The panel completely, and, perhaps, deliberately, failed to recognize the primary issue in this case that the proof of the improper contact between the jury and Appellants' counsel, which was communicated to Counsel by court staff created a <u>presumption of prejudice</u>, and that, not only should the Appellants have been given the benefit of that presumption, but they further pointed to actual prejudice in the handling of their case that was never rebutted at all.

4. This Court, just like the lower court, did not even attempt to address the clear United States Supreme Court precedents cited by the Appellant's in their brief, and appeared to almost have deliberately ignored the issue in its zest to deny the Appellants access to justice. It was, at the very least, intellectually dishonest, and the way the opinion reads, it appears as if it was a deliberate obfuscation of this very clear issue.

5. The panel's failure to even cite to the cases of <u>Mattox v. United States</u>, 146 U.S. 140 (1892), <u>Remmer v. United States</u>, 347 U.S. 227 (1954), or <u>Smith v. Phillips</u>, 455 U.S. 209 (1982) cannot be excused. These cases prescribe the burdens that are imposed, and the responsibilities of the courts when confronted with the type of improper contact that was established to have

occurred in this case. The lower court should have recognized that a presumption of prejudice applies based upon the contact, and then should have held a hearing on the matter before making any decision on the Appellants' Rule 60(b)(6) motion. There is no dispute under the pronouncements of the United States Supreme Court that this is exactly what should have been done, and, again, the panel's failure to even cite these cases, while saying that it "carefully reviewed" the arguments of the Appellants simply cannot be justified in any honest way.

6. The heart of the panel's error is revealed at footnote 2 of the Memorandum opinion denying the appeal. Again, the fact that the <u>Mattox</u>, <u>Remmer</u>, and <u>Phillips</u> cases were not even cited speaks volumes as to the overall integrity of the panel's opinion, but, then, further, in footnote 2, the panel states that the contact was "seemingly innocuous," and, more significantly, that the Appellants did not point to evidence that this affected Counsel's trial strategy. This is just false and betrayal to the Appellants' access to justice.

7. The Appellant's Appendix included the handwritten notes from Attorney Autry that referenced both the improper contact, as well as the fact that it affected his trial strategy. This evidence included statements that states *"The jury is telling staff that they believe Underhill is wasting their time; I will ask very few questions on cross"* and *"The jury is growing impatient. I*

*don't want them to blame us for how long this trial is taking; I will do a longer cross of Karen like I did with Jeff and John.*" Then there is the additional evidence of witnesses that were not called, and documents that were not put into evidence.  It is not for a Court to parse these references, minimize them, call them innocuous, or give them any other meaning; it is only for a court to presume prejudice from the contact, accept this as evidence of actual prejudice, and schedule a hearing to conduct further inquiry into the presumption.  Again, the gratuitous statement by the panel in this case that it "carefully reviewed" the matters submitted by the Appellants is spurious on its face.  The Appellants are entitled to better quality of appellate review than this in their hard fought and meritorious case for years,

8.  The only other decision that this Court could have rendered on the facts of this case was to reverse the lower court on the face of the record, and order the judgment opened.  Again, there is a <u>presumption of prejudice</u>, on the contact with the jury alone, and Appellants submitted additional evidence that there was actual prejudice, i.e., the questioning of witnesses and introduction of evidence was limited based strictly upon the information communicated by the jury – the Appellees did not attempt to rebut any of this, and neither did the lower court, and the only result under the circumstances would have been to order the judgment opened.

9. The Appellants do not dispute that there is contact that is expected to occur between court staff and the jury, and that is not at all what the Appellants are having an issue with; it was the communication to Appellant's Counsel of the information communicated by the jury that is the problem.  It appears that the lower court judge is more interested in protecting her court staff, and this Court is more interested in protecting the lower court judge, and neither court is interested in protecting the integrity of the jury proceedings, and the Appellants' right of access to justice.  A mistake was clearly made by the court deputy in communicating the information to the Appellant's lawyer, and mistakes happen, and that is what this Court is here to protect against. The integrity of the trial in this case, and of the jury proceedings were clearly undermined in this case, and it is the duty of this Court to protect and uphold these principles to prevent miscarriage of justice and legal system.

10. The remedy under the applicable precedent, as enunciate in <u>Remmer</u> is a hearing to determine whether the presumption of prejudice can be rebutted. It applies in both criminal cases, and civil cases under Section 1983.  <u>Hayley v. Blue Ridge Transfer Co. Inc.,</u> 802 F.2d 1532 (4th Cir. 1986).  In Remmer, the Court said:

> any private communication, contact, or tampering directly <u>or indirectly</u> (emphasis added), with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed

presumptively prejudicial if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but <u>the burden rests heavily</u> (emphasis added) upon the [party who benefitted from the jury verdict] to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant…. [and that] [t]he integrity of jury proceedings must not be jeopardized by unauthorized invasions. The trial court should not decide and take final action *ex parte* on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.

11. In the <u>Hayley</u> case, the Court went through the proper analysis of how such matters should be addressed, including the holding of a hearing, and including the recitation that the party seeking to uphold the verdict in the face of an improper jury contact bears a "heavy burden" of overcoming the presumption of prejudice.  The Court reversed the jury verdict and remanded the case for a new trial.

12. The same result was reached in <u>Rinker v. County of Napa</u>, 724 F.2d 1352 (9th Cir. 1983), a case, like the present and <u>Hayley</u>, under Section 1983, where the Court remanded the case back to the district court, even after the district court made some inquiry into the issue of improper jury contact, for a new trial.

13. The lower court and this Court tried to minimize the character of the communication, i.e., that it was an "innocuous" contact between the jury and the court staff, which may well be true if that is where it ended, i.e., if it was just the jury communicating frustration with the pace of the trial to the court staff, but that is not where it ended, and the real harm came when that information was communicated to Attorney Autry. This is every bit the type of improper jury communication communicated in any of the other cases, because it breached the roles of the jury and the parties, and interfered with the independent roles each serves in the jury system. As the Remmer court stated it can either be direct or indirect contact.

14. Moreover, despite the presumption of prejudice that applies, the Plaintiffs are not simply speculating that this otherwise "innocuous" contact may have had some theoretical impact on the proceedings; the Appellants pointed to actual evidence, in the handwritten notes of their Counsel, that this information did have a direct impact upon the proceedings in that Appellant's Counsel made a strategic decision to limit his examination based upon that improperly communicated information – the evidence of this was placed before the lower court, and before this Court, and it violates the Appellants' due process rights for the Court to have dismissed the

significance of this evidence without directing that the required hearing be held to investigate into this serious matter that infected the jury trial process.

15. In addition to the handwritten note, the Appellants point to additional evidence of actual prejudice. There were 6 witnesses who were subpoenaed to give testimony in this matter who were not called to testify by Attorney Autry. Some of these witnesses gave depositions in the case, and Appellants submit, had they been called in this case, they all would have further bolstered the Appellants' claims that Indian and other non-minority residents of East Pennsboro Township were systematically treated less favorably than the non-minority residents. In addition, by failing to call the policymakers at the time of trial, the Appellants were prejudiced in their ability to make out their <u>Monnell</u> claims against the Township to attach the Municipal Liability.

16. The Appellants do not bring these things in to rehash old arguments, but to show that there was abundant evidence of their claims of actual prejudice, in addition to the presumption of prejudice, and that they are not just making theoretical, speculative, assumptions, but pointing to real areas of inquiry that should have been had if the lower court performed its mandatory duty of holding a hearing to inquire into these things further.

17. In addition, as the panel did point out, this is not the only evidence of improper jury contact in this case. There was the one matter that was

brought to the attention of the lower court about the brief encounter involving Appellants' Counsel and more than one potential jurors arriving at the Courtroom using the same elevator on the first day when the jury selection was done.  Despite the fact these potential jurors had no verbal interaction with any counsel and no knowledge about the facts of the case, Counsels demanded for removal of these jurors in an attempt to impress and blindfold the Trial Judge with their "honesty", but there were more serious matters that should have been brought forth, and which were mentioned by the Appellant in his various filings, about gestures being made between Counsel for the Appellees and at least one juror, including comments on a football game were completely covered up.  Appellants also submit that this juror who had improper contact with Appellees' Counsel outside the Courtroom and was impatient to allow fair trial time to present their case should have been removed as there were more than one standby jurors.

18. While, again, standing alone, these may not have been prejudicial on their face, in the context of the much more severe issue of the information and *frustrations* expressed by the jury being communicated to Appellants' Counsel, it is clear that there were things that occurred that affected the integrity of the proceedings, and that may well have, and Appellants submit did, prejudice their right to a fair and impartial jury.  All of these things

should have been inquired into at the time of the required hearing that the lower court never had, and that this Court did not even mention.

19. The matter of the "virtual abandonment" of the case by Attorney Autry is a separate issue, or, at least, an issue that was not essential to the issue of the improper jury contact, i.e., the matter of the improper jury contact, which was the first issue raised and argued by the Appellants, stands on its own, any issue of "virtual abandonment" aside, and justifies the relief that the Appellants requested. That relief, which should have been directed by this Court, should have been to remand this matter to the lower court to hold the hearing that it is required, as a matter of Supreme Court precedent to hold. This Court cannot just ignore the precedents of the United states Supreme court, and the presumption of prejudice that it dictated, and the requirement that a hearing be held, and that the Appellees, who were the beneficiaries of the verdict in the court below, come forward, and show evidence to rebut that presumption, and to show that there was no prejudice. This Court skipped right over all of that, and also skipped right over the evidence that the Appellants submitted showing actual prejudice, then justified the lower court's decision in complete ignorance of what the law requires under the circumstances. It is absolutely unjustifiable, and a complete abnegation of this Court's appellate review responsibilities results in miscarriage of justice.

20. The "virtual abandonment" issue, which was all that this Court really

   focused on, should, nonetheless, be given consideration in the context of the

   improper jury contact issue. The Appellant's attorney, who was being paid

   hourly, with no contingency incentive, compromised the handling of the

   Appellant's case based upon the information improperly communicated to

   him from the jury, then failed to bring that to the attention of the court,

   despite the Appellants' requests. He then dropped the Appellants as clients

   immediately after the trial, not even assisting them through the post-trial

   process. He failed to call important witnesses, failed to put on material

   documentary evidence, and, even though he did handle the case for a few

   months, and attend the trial, the evidence is still sufficient to establish his

   virtual abandonment of the Appellants. See Carter v. Albert Einstein

   Medical Center, 804 F.2d 805 (3d Cir. 1986); Boughner v. Secretary of

   Health, Education & Welfare, 572 F.2d 976 (3d Cir. 1978).

21. The allegations of this Petition clearly establish that the memorandum and

   order of the panel were entered in grave error that violated the well-

   established precedents of the United States Supreme Court, and the courts of

   other federal circuits. The panel did not just err analytically, it appears to

   have wholly disregarded, even deliberately disregarded, these issues for

   unknown purposes, but for purposes that fly in the face of their duty to

conduct appellate review with fidelity to the Constitution, and the citizenry who they serve.

WHEREFORE, for all the foregoing reasons, this Court should grant rehearing by the panel, or the Court en banc to consider and properly decide these most serious matters relating to the integrity of the jury, and the proceedings of the courts of the United States.

Respectfully Submitted,

Gnana M. Chinniah, Plaintiff, *Pro Se*

Suganthini Chinniah, Plaintiff, *Pro Se*

506 Erford Road
Camp Hill, PA 17011
Home Tel: 717 732 6273
Email: chinniahg@hotmail.com

Date:  December 31, 2015

EXHIBIT C



**UNITED STATES COURT OF APPEALS**

**FOR THE THIRD CIRCUIT**

RECEIVED
MAR 2 3 2016
U.S.C.A. 3rd. CIR

---

No. 14-3355

---

**Gnana Chinniah et al,**

**Plaintiffs – Appellant**

**v.**

**Township of East Pennsboro et al,**

**Defendants – Appellee**

---

**APPEAL FROM THE UNITED STATES DISTRICT FOR**

**THE MIDDLE DISTRICT OF PENNSYLVANIA**

**No. 1:08-CV-01330**

**Honorable Judge Yvette Kane**

---

**APPELLANTS' PETITION FOR BOTH**

**PANEL AND EN BANC REHEARING**

---

Christopher S. Underhill, Esq

221 E Chestnut Street

Lancaster, PA 17602

717 299 7254

Attorneys for Appellee

Gnana Chinniah, *Pro Se*

Suganthini Chinniah, *Pro Se*

506 Erford Road

Camp Hill, PA 17011

717 732 6273

chinniahg@hotmail.com

PETITION FOR REHEARING

FOR ERROR IN LAW OR PROCEDURAL PROCESS

## CONTENTS

I.      INTRODUCTION ...................................................................1

II.     SUMMARY OF ARGUMENT.............................................1

    A.  Building Code Interpretation is question of law, not fact....................................1

    B.  Critical Defense Witnesses under subpoena were not presented....................2

    C.  Defense witness admits to premeditated "selective enforcement"...................3

    D.  Erroneous application of misconstrued dates to Kapoor and Felmlee ownership..................................................................3

III.    INTERPRETING BUILDING CODES IS A MATTER OF LAW AND SHOULD NOT BE LEFT TO THE JURY.................................................4

IV.     COURT ERRED IN ACCEPTING ABSENCE OF DEFENCE WITNESSES UNDER SUBPOENA.........................................................................6

V.      THE MALICIOUS AND PREJUDICIAL STATEMENTS OF THE DEFENDANT WAS NOT GIVEN SUFFICIENT WEIGHT TOWARDS DETERMINING SELECTIVE APPLICATION OF RULES........................8

VI.     COURT ERRED IN USING ERRONEOUS DATES TO DEFENDANT'S ENGAGEMENT WITH KAPOOR AND FELMLEE.....................................11

TO THE HONORABLE PRESIDING JUSTICE AND THE HONORABLE ASSOCIATE JUSTICES OF THE COURT OF APPEAL, 3rd CIRCUIT APPELLATE DISTRICT:

Pursuant to rule Fed. R. App. P. 35 and 40, 3rd Cir. LAR 35 and 40, Gnana M. Chinniah and Suganthini Chinniah, (Appellants, Plaintiffs) petition this Court for a rehearing in the above-entitled matter after the Court  affirmed the ruling of the district court in favor of the Township of East Pennsboro, et al (Appellees, Defendants).

## I.    INTRODUCTION

By this motion for rehearing appellants ask this court to revisit its decision to affirm the lower court's decision to deny Plaintiffs' motion for judgment as a matter of law, or, in the alternative, for a new trial (Doc. No. 267). This Court issued its Opinion on 03/09/2015.

Rehearing is appropriate in this important and hard fought case because the Court's ruling disregards critical evidence that was misinterpreted, key evidence omitted because witnesses under subpoena were not presented by the Defendants, and the Court misapplied rules to erroneous facts. For these reasons, the appellants urge the panel to consider the following arguments with care.

## II.    SUMMARY OF ARGUMENT

The Appellants submit that the Court's findings are erroneous in four distinct respects:

A.  <u>Building Code Interpretation is a question of law, not fact</u>

Appellants contend that the core of the current litigation centers around the use of, and the alleged erroneous application of, the appropriate building code by the Defendants, and assert that the Court has not exercised its discretion in determining if the interpretations are consistent. "Building code is essentially a legal document, and only a judge can rule on matter of law, interpretation of the code  in  lawsuits is made -not by the engineer who use, enforce, or write the codes- by judge," Concrete International, May 2003. In the case at bar, the Appellants urge this court to rule on the Code interpretation issue as a question of law, as decided in the Samsel v. Uniform Construction Code Board of Appeals of Jefferson Township, 10 A.3d 412 (Pa. Cmwlth.

2010), where the State trial court, and later the Courts of Appeal, interpreted the Uniform Construction Code as a question of law in deciding the meaning of "agricultural building."Also, the decision in Mesa Vista v. California Portland Cement Corporation, 12 Cal, Rptr. 3d 863- Cal: Court of Appeal, 4th Appellate Dist., 3rd Div. 2004, where the Judge made the decision as a matter of Law on the correct interpretation of the code applicable to, in this case, the disputed concrete structures, is highly persuasive for this Court to regard the Code interpretation as a matter of law.

As the Honorable Judges are fully aware, legislation of building codes inherently eliminates or minimizes engineering judgment, and as technology progresses, municipalities invariably improve the building codes to accommodate advances in technology – lighter, stronger materials, improved processes in manufacturing etc. The resulting changes to the building codes are stricter, as the Chief Magistrate Judge Thomas Blewitt has firmly stated in the ruling for Motion for Summary Judgement. However, later the District Court accepted Appellees' argument upheld by the Jury, and ruled that the 1995 IRC Code is incorporated into 2004 PA UCC Code. This ruling is clearly in error, as, while the 2004 Code might incorporate some elements of 1995 Code, many of the rules and specifications in the 2004 Code are "stricter, and more difficult to comply with" as there are several aspects of the construction yet to be completed and inspected by following PA UCC 2004 which is not even the applicable code to the subject property due to its exemption. Moreover, by allowing the interpretation of the building code to the jury and not deciding the outcome as a matter of law, the Court erred in its ruling of this key issue.

### B.  Critical Defense Witnesses under subpoena were not presented

The District Court Judge failed to prevent defense witnesses under subpoena from absenting themselves from the Court without any penalty. However, the Court denied two motions in Limine, as the Defense moved the motions to "protect the witnesses." We can plausibly infer that the Defense took these steps to prevent inculpatory evidence. The Appellants assert that the omission of key inculpatory evidence  that would have been possible from these seven witnesses has had a detrimental impact on to the Plaintiffs position in the landscape of justice as the Court failed to take action on the absent subpoena holders.

Appellants assert that evidence to further support their claims of selective enforcement on the Appellants for the increased number of building permits, and for the increased parking spaces, were seriously hampered by the witnesses under subpoena not presented to the Court by the Defendants, particularly Mr. Melnick who was the proponent of the parking ordinance reversal.

Further, on the contributory factor associated with ineffective counsel, a prima facie legal malpractice claim has three elements: (1) the existence of an attorney-client relationship (2) the attorney's material breach of the duty to provide skillful and competent representation (3) harm to client caused by said breach. The trial court record establishes each. Although Appellant Chinniah does not assert ineffective counsel as a basis for review of the appellate judgment, Chinniah submits that the Appellate Court improperly and adversely construed the weight of the absence of evidence against Chinniahs, without reasonable consideration of the incompetent representation by Chinniah's attorney that caused the absence of evidence - a serious matter.

### C. Defense witness accepts premeditated "Selective Enforcement"

Defendant Shultz, during cross examination, admitted that he issued the Stop Work orders against Lot 3B and Lot 3C owned by the Plaintiffs although he never inspected them or found any violations in them NOT on any rational basis, but because of his "non-amicable relationship"/ personal animus with the Plaintiffs. This shocking admission clearly violates the requirements of substantive due process under U.S.C § 1983 and Class-of-One Equal Protection Coverage of the Fourteenth Amendment, not-withstanding his later retraction that his statement was misconstrued. As a question of fact, the jury decided to accept his recanted version as final disregarding intent of malice inherent in the first articulation. While fact-finding can include inferences on Defendants' subjective thought process, open admission on a critical issue, as the Defendant has demonstrated in this case, reflect systemic and unambiguous "selective enforcement" mindset of the Defendant, and therefore, Appellants assert that the Court failed to provide "a high weighting factor" to this unforced admission of Defendant, which reinforced the pre-meditated enforcement of arbitrary rule on a member of a minority racial class.

### D. Erroneous application of misstated dates to Kapoor and Felmlee ownership

Appellants contend that the Trial Court made serious error in identifying the time at which the Indian land owners, Dr. Anita Kapoor and her husband Dr. Arun Kapoor had purchased their

*3*

property from the previous non-Indian owner Mr. Kevin Felmlee. This error distorted the Courts argument in portraying the Dr. Kapoors as violators.

Hon. Judge Kane quotes a letter written by Ms. Kimberly Brown for issues dating back to February 2007 to attach the blame for the alleged violations to the Kapoors who purchased the property in question from Mr. Kevin Felmlee on April 9, 2007.  The violations listed in Ms. Brown's letter were present during the ownership of the previous non-Indian owner, and the record shows that the Defendants failed to mandate the previous owner, Felmlee to rectify these alleged deficiencies. However, the Defendants used extreme measures including fines over $20,000 and eventual condemnation of this property for alleged structural deficiencies that pre-existed as early as 2005 and the Defendants received written complaints from the very same tenant, Ms. Brown.

Similarly, the second letter from Ms. Stacey Tinkey quoted by Hon. Judge Kane clearly shows that the alleged violations preexisted at the time when the property was owned by Kevin Felmlee and the Indian land owners were willfully punished using "Selective Enforcement" measures of the Defendant Township that the trial Court failed to identify and correctly apply the most appropriate case law, Desi's Pizza, Inc. v.  City of Wilkes-Barre (2006) to rule on this issue.

## III.   INTERPRETING BUILDING CODES IS A MATTER OF LAW AND SHOULD NOT BE LEFT TO THE JURY

Honorable Judge Kane wrote "The jury heard evidence suggesting that the IRC 1995 was subsequently incorporated into the PA UCC 2004, meaning that the jury could reasonably find that Plaintiffs and Mr. Mowery were held to the same standard." The Court had erred in allowing the jury to decide on an issue that is a matter of law. Moreover, this opinion contradicts with the opinion of Chief Magistrate Judge Honorable Thomas Blewitt of the District Court after his extensive review of facts in Defendants' Summary Judgment Motion as this was quoted in the Plaintiffs' Post-Trial Brief:

4

*"Plaintiffs have sufficiently shown that when they bought the property, Defendant Shultz was requiring them to comply with the new stricter building requirements, instead of the 1995 CABO Code, regarding the framing of the property already performed by Mowery" (Doc. 158: Report and Recommendations on Defendants' Motion for Summary Judgment, Pages. 29-30). This conclusion was reaffirmed by **Honorable Chief Judge Kane in the Memorandum Orders dated June 5, 2012 (Doc. 161) and July 25, 2012 (Doc. 168)** by stating **"On the current record, a jury could find that Defendant Shultz quite literally applied a double standard to the property's framing when he inspected the property at the time it was owned by a white man as compared to when he inspected the property at the time it was owned by an Indian man."***

It is an undisputable fact that PA UCC 2004 is much stricter than IRC 1995 a/k/a CABO 1995 although it may incorporate some provisions of these previous standards/codes just like the Microsoft Windows latest version and its older version are very different although the latest version may incorporate some earlier features/standards of its previous version, however, the latest version is always a stricter one.

The Honorable Judge Kane and the jury failed to note that PA UCC 2004 (Plaintiffs' Trial Exhibit 11) is not applicable to the construction at the Plaintiffs' property due to the exemptions of this law as it clearly states:

*"The Uniform Construction Code does not apply to:*

*(1) New buildings or renovations to existing buildings for which an application for a permit was made to the Department or municipality before April 9, 2004*

5

*(2) New buildings or renovations to existing buildings on which a contract for design or construction was signed before April 9, 2004"*

<u>It is an undisputed fact that the construction of the subject property began in 1997, and as of June 20, 2007, Defendant Shultz never required the previous non-Indian owner, Mr. Mowery to comply with the non-applicable Building Code, PA UCC 2004 which is a much stricter than CABO 1995 as stated above.</u>

The Appellants (Plaintiffs) humbly urge the Honorable Judges at this Court of Appeals to undo the above proven clear and manifest injustice to them since it will be a miscarriage of justice, and to also consider the erroneous decision to leave the matter, which should be decided as a matter of law, to the jury.

## IV.   COURT ERRED IN ACCEPTING ABSENCE OF DEFENSE WITNESSES UNDER SUBPOENA.

Plaintiffs contend that at least seven (7) of the Defendant Township's policy makers that include several previously deposed witnesses, ignored the subpoenas served on them and didn't appear in Court. These are key witnesses, and non-attendance has introduced a huge gap in possible inculpatory evidence from these witnesses which the defense have attempted to avoid through unsuccessful Motions of Limine.

1. Mr. James Hertzler, Former Vice-President and Police liaison/Commissioner of East Pennsboro Township, and Current Commissioner of Cumberland County, Pennsylvania: Appellants assert that Mr. Hertzler has knowledge about Equal Protection violation of Plaintiffs' rights and the alleged indifference of the Police towards the complaints of Plaintiffs.

2. Mr. George DeMartyn, Former President of the Board of Commissioners of the Township:

6

Appellants assert that Mr. DeMartyn has knowledge about Equal Protection violation of Plaintiffs' rights and the alleged indifference towards the complaints of Plaintiffs and other Indian Land owners.

3.  Mr. Wayne Melnick, Attorney & Current Commissioner of the East Pennsboro Township: Appellants assert that Mr. Melnick was the proponent of the Parking Ordinance Reversal and was aware of Plaintiffs legal actions and acknowledged that mistakes were made that can be used against the Township.

4.  Mr. John Kunzelman, Current Commissioner of the East Pennsboro Township: Appellants assert that Mr. Kunzelman who was aware of the Equal Protection violation of Plaintiffs' rights and deliberate indifference towards the complaints of Plaintiffs and other Indian Land owners.

5.  Mr. Dennis McMaster, Former Chief of Police of the East Pennsboro Township: Appellants assert that Mr. McMaster justified the threat of Mr. Tex Roadcap as "Freedom of Speech" and condoned his intimidations and refused to reassure Plaintiffs' safety by investigating the threat and taking legal actions.

6.  Mr. Daniel Hausenauer, Former Police Officer of the East Pennsboro Township: Appellants assert that Mr. Hausenauer covered up the identity of Mr. Tex Roadcap as "unidentified white male" and covered up the threat in April 2008.

7.  Ms. Debbie Lupold, Current Tax Collector of the East Pennsboro Township: Appellants assert that Ms. Lupold was involved in the alleged retaliatory tax assessment of the subject property to about $290,000 while Plaintiffs seek legal remedies at State and Federal Courts.

The Trial Court denied at least two Motions in Limine to protect a sub-group of the above listed witnesses, Defendants' failed to produce these witnesses during trial, ignoring their Federal subpoenas.

7

## V.   THE MALICIOUS AND PREJUDICIAL STATEMENTS OF THE DEFENDANT WAS NOT GIVEN SUFFICIENT WEIGHT TOWARDS DETERMINING SELECTIVE APPLICATION OF RULES

Plaintiffs provided extensive documentation to question the credibility of Defendant Shultz's testimony during trail and to prove Class-of-one Equal Protection Violation under the Fourteenth Amendment as Defendant Shultz also admitted that he issued stop work orders against Lot 3B which he never inspected due to "non-amicable relationship" with the Plaintiffs (Plaintiffs strongly deny them being non-amicable).

Plaintiffs humbly urge the Honorable Judges of the Court of Appeals to carefully review their arguments to the District Court provided in the Post-Trial Brief as fully re-stated below:

Plaintiffs have provided sufficient evidence for the previous framing inspection of the property by the Defendants, and adequate confirmation that they were strictly following the fire stopping at required locations within a townhouse (Lot 3A) while Defendant Shultz was totally wrong when he thought he had inspected the 2-Unit apartment in Lot 3B by subjecting the Plaintiffs to "different/ ill treatment", and by accompanying Mr. Gould to witness his premeditated actions without any rational basis, but with animus (Plaintiffs' Trial Exhibits 2,7, 8, 9 and 20). In addition, Plaintiffs' provided testimony quoting their legal counsel's protest against Mr. Shultz's re-inspection of the framing by stating:

"At no time do I recall discussing the need for a framing inspection. Furthermore, your assertion that no inspection of the framing was performed does not appear to be supported by the objective evidence. First, the framing at the property has been constructed and completed since approximately 2000. The Township has performed multiple inspections and site visits since that time. This construction time frame preceded your hiring by East Pennsboro Township, and I understand that having proper paperwork in that file has been an issue. You have also visited the property on several occasions, however, and discussed "finishing requirements" with the prior owner, Mr. Mowery. Second, my client has multiple photographs of several notations in your handwriting to the insulated walls of the properties. These notations are made in between the

framing and reference the type of drywall to be used in accordance with the fire code in place at that time. There has therefore been both opportunity and evidence of the framing inspection having been completed."

During depositions and during trial, Defendant Shultz admitted that his letter dated November 16, 2007 (Plaintiffs' Trial Exhibit 14) had several mischaracterizations and inaccurate information about his framing inspection on November 2, 2007. For example, Mr. Shultz wrote "I was requested to conduct a framing inspection at 3B Cassatt Street. Mr. Robert Gould, East Pennsboro Township Codes Enforcement Officer, accompanied me on that day. Upon arrival [at 12:30 pm] we proceeded to the rear of the property.....Your client arrived short time later".

During Plaintiffs' counsel' examination at trial, Mr. Shultz stated that he did not start his inspection at 12:30 pm when they arrived at the site, 30 minutes earlier than the scheduled inspection time of 1:00 pm. However, he was defying his own false statement by saying that he was not blind to not to notice the deck construction while waiting for the Plaintiffs at 1:00 pm scheduled appointment.

In addition, this letter refers to the requirement for the required tenant fire separation wall and ceiling of the 1st floor apartment which confirms that the Defendant thought he had inspected the 2-Unit apartment in Lot 3B when, in fact, his contentions of "framing inspection" and "fire stopping" issues were related to the townhouse in Lot 3A that he inspected on November 2, 2007.

Moreover, Defendant Shultz **again** changed his testimony during cross examination by stating that he issued the Stop Work orders against Lot 3B and Lot 3C although he never inspected them or found any violations in them because of his "non-amicable relationship"/ personal animus with the Plaintiffs, but NOT on any rational basis, which violate the requirements of substantive due process under U.S.C § 1983 and Class-of-One Equal Protection Coverage of the Fourteenth Amendment.

This Honorable Court may have already noted that Defendant Shultz justified his unlawful Stop Work Order against Lot 3B which was enjoined by Honorable Judge Oler of Cumberland County Court

of Common Pleas on January 15, 2008, effective immediately. Only after Mr. Shultz's supervisor Mr. John Owen admitted that the Stop Work Orders against Lot 3B and Lot 3C were unlawful, Mr. Shultz changed his testimony again for the reasons for his unlawful Stop Work Orders against Lot 3B and Lot 3C and stated that "it was a mistake and I did not mean what I said yesterday" about the non-amicable relationship (Plaintiffs strongly deny them being non-amicable).

Plaintiffs strongly believe that the jury were misled by the Defendants' self-serving "fire stop scare tactics" of exaggerating about a few drilled holes not fire stopped by the Plaintiffs although it was prevented by Defendants' premature and unlawful Stop Work Orders without any rational basis. As in the case of *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 2006 U.S., Plaintiffs are Hindus and Indians, and are members of a protected class who never violated any ordinances or codes of the Defendants', but are being penalized. Therefore, Plaintiffs humbly urge this Honorable Court to use its discretion to recognize the overwhelming evidence and testimony presented by the Plaintiffs during trial and undo the mistake made by the jury, since the Defendants' version of the framing or fire stopping concerns are not the real reason for their premeditated and unfair selective enforcement using unlawful stop work orders to Plaintiffs without any rational basis, as evidenced by Defendants' animus/bias, self-contradictory, not truthful, and intentional misstatements to this Honorable Court.

Based on the above arguments, Plaintiffs strongly believe that Defendant Shultz violated Substantive due process when he issued his stop work order to the 2-unit apartment in Lot 3B which he never inspected to find any violations but because of non-amicable relationship/personal animus with the Plaintiffs. Plaintiffs also have shown that Defendant Shultz violated the provisions of the Class-of-One Equal Protection as in the case of *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) since he lacked any rational basis for his disparate treatment/capricious discrimination by issuing a stop work to Lot 3B.

## VI.   COURT ERRED IN ACCEPTING USE OF ERRONEOUS DATES TO DEFENDANT'S ENGAGEMENT WITH KAPOOR AND FELMLEE.

Plaintiffs assert Defendants were engaged in a "selective enforcement" against the Indian landowners, and were very lenient against similarly situated non-Indian land owners some of whom are repeat offenders. Plaintiffs humbly urge the Honorable Judges for a detailed review of Doc. No. 268, where evidence of selective enforcement is presented, and further argued in the following paragraphs.

The violations listed the letter from Ms. Kimberly Brown as quoted on page 15 of her Memorandum - the apartment had been "vacant since end of February [2007], it was left dirty. There was food in the refrigerator, cat food on the floor, boxed food was left out, the second-floor window has been open all this time...etc" all existed when the property was owned by the previous non-Indian owner, Mr. Kevin Felmlee.  The 4-unit townhouse building in question was acquired by Dr. Arun Kapoor and Dr. Anita Kapoor on April 9, 2007 and the prior owner or the Defendant Township never took any actions to address those violations for almost two months, but acted to aggressively enforce the county ordinance on the non-Indian owner Dr. Anita Kapoor with extreme measures of arrests and fines of $20,300 and eventual condemnation their property for some structural issues that existed at the when the property was owned by Mr. Kevin Felmlee.

Defendants were well aware of the very structural deficiencies through complaints filed by the same tenant, Ms. Kimberly Brown as early as 2005 when the property was owned by the non-Indian owner and failed to take any similar enforcement against, and covered up this as Plaintiffs demonstrated in their Brief which clearly demonstrated a pattern of "selective enforcement" against Indian landowners.

Similarly, the letter from another tenant, Ms. Tracey Tinkey also states that "Kevin [Felmlee] was supposed to repair" some deficiencies which clearly confirms that several of those deficiencies that the Kapoors were charged and penalized,   pre-existed at the time when the property was owned by the previous non-Indian owner, Mr. Kevin Felmlee. The Defendants did not take similar enforcement actions non-Indian owners, instead, used extreme selective enforcement against Indians.

11

Plaintiff Gnana Chinniah also clearly testified that he inspected Kapoors' property in May 2008, after it was condemned by the Defendants, to check the conditions in light of the engineer report. Based on his professional experience and observations, the Plaintiff testified that he strongly believed that the alleged structural deficiencies mentioned in the engineers' report must have existed when the property was sold to the Kapoors as there was no reported natural disaster to blame for its condemnation, other than the preexisted rotten frame work that was never repaired by Mr. Felmlee.

Ms. Brandi Mellott, the second Building Inspector of the Defendant Township also admitted during trial that she treated the prior non-Indian owner Mr. Kevin Felmlee less aggressively and more leniently than Dr. Anita Kapoor and Dr. Arun Kapoor which supports Dr. Anita Kapoor's perception of "selective enforcement" as she had repeatedly questioned the Defendants why they did not go after the previous owner to mandate these major repairs, and why the Defendants had let this property to be sold in this conditions. ((Deposition of Dr. Anita Kapoor, Pg 8, Brief of Plaintiffs' on Motion for Summary Judgment (Doc 119), Pg. 19 to 21)).

## CONCLUSION

For the foregoing reasons, the Appellants respectfully request for both panel and en banc rehearing and pray that this Honorable Court would decide the case in their favor after detailed review.

Respectfully submitted,

Gnana Chinniah

Suganthini Chinniah

*Pro Se Litigants*

**506 Erford Road**

**Camp Hill, PA 17011**
**Tel: 717 732 6273 (H) or 717 979 9245 (M)**

12

EXHIBIT D

# RE: Follow up on Amicable Resolution of *Chinniahs' Complaints*, Public Meeting, Seeking Concurrence on Motions and Notice to Preserve Evidence

## David MacMain

Tue 2/9/2016 2:43 PM

To: Carmelite, Donald L. <DLCarmelite@MDWCG.com>; Gnana Chinniah <chinniahg@hotmail.com>; Schwartz, Edwin A. <EASchwartz@MDWCG.com>; Lisa@coyneandcoyne.com <Lisa@coyneandcoyne.com>; tnaylor@baricscherer.com <tnaylor@baricscherer.com>; jautry@laverylaw.com <jautry@laverylaw.com>; jeff.conrad@clymerlaw.com <jeff.conrad@clymerlaw.com>; jim.clymer@clymerlaw.com <jim.clymer@clymerlaw.com>;

Mr. Channiah:

On behalf of the County Defendants, I join in Attorney Carmelite's e-mail below:

1.      You are to have no further contact with my clients regarding the case - contact me directly if you have something related to the case that you wish to communicate.

2.      We have no interest in paying anything in this case - we view it baseless and expect to seek fees and costs against you when we prevail.

3.      I do not concur in your attempted recusal of Judge Kane.

**David J. MacMain**



**The MacMain Law Group LLC**

**101 Lindenwood Dr.**
**Suite 160**
**Malvern Pa. 19355**
**Direct: 484.318.7703**
**Fax: 484.328.3996**
**dmacmain@macmainlaw.com**
**www.macmainlaw.com**

-----Original Message-----
From: Carmelite, Donald L. [mailto:DLCarmelite@MDWCG.com]
Sent: Thursday, February 04, 2016 11:21 AM
To: Gnana Chinniah <chinniahg@hotmail.com>; Schwartz, Edwin A. <EASchwartz@MDWCG.com>; David MacMain <DMacMain@macmainlaw.com>; Lisa@coyneandcoyne.com; tnaylor@baricscherer.com; jautry@laverylaw.com; jeff.conrad@clymerlaw.com; jim.clymer@clymerlaw.com
Subject: RE: Follow up on Amicable Resolution of Chinniahs' Complaints, Public Meeting, Seeking Concurrence on Motions and Notice to Preserve Evidence

Mr. Chinniah, This is the second time in as many weeks that you have contact my clients directly. Please stop immediately. As I advised in my email of January 19, you are not to contact my clients about this case as it is prohibited by the rules. If you have legitimate, unrelated business with the Township, you are free make respectful contact with the appropriate Township official. Your current email does not fall into this category. If you continue with your actions, I will seek an appropriate remedy with the court, including cost and fees associated with the same.

Additionally, do not make contact with Mr. Bender. I will communicate with Mr. Bender on behalf of the Township as necessary. I take offense to any suggestion that you need to make sure that your settlement demands are communicated. Please stop immediately. Again, if you continue with your actions, I will seek an appropriate remedy with the court, including cost and fees associated with the same.

Your claims against my clients lack merit and your demands are rejected in their entirety.

Lastly, I do not concur in any motion for the recusal of Judge Kane.

Your anticipated cooperation is appreciated.

DLC




Donald L. Carmelite
Attorney at Law
Marshall Dennehey Warner Coleman & Goggin
100 Corporate Center Drive
Suite 201
Camp Hill, PA 17011

Direct: (717) 651-3504
Main: (717) 651-3500
Fax: (717) 651-9630

This e-mail transmission and any documents, files or previous e-mail messages attached to it, are confidential and are protected by the attorney-client privilege and/or work product doctrine. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of any of the information contained in, or attached to this e-mail transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify me by forwarding this e-mail to DLCarmelite@MDWCG.com , or by telephone at (717) 651-3504 and then delete the message and its attachments from your computer.

-----Original Message-----
From: Gnana Chinniah [mailto:chinniahg@hotmail.com]
Sent: Thursday, February 04, 2016 8:21 AM
To: Carmelite, Donald L.; Schwartz, Edwin A.; dmacmain@macmainlaw.com; Lisa@coyneandcoyne.com; tnaylor@baricscherer.com; jautry@laverylaw.com; jeff.conrad@clymerlaw.com; jim.clymer@clymerlaw.com
Cc: kmagaro@eastpennsboro.net; gtyson@eastpennsboro.net; jkuntzelman@eastpennsboro.net; phartman@eastpennsboro.net; cgelb@eastpennsboro.net; jhertzler@ccpa.net; vdifilippo@ccpa.net;

geichelberger@ccpa.net; pbender@travelers.com
Subject: Follow up on Amicable Resolution of Chinniahs' Complaints, Public Meeting, Seeking Concurrence on Motions and Notice to Preserve Evidence

Dear Mr. Carmelite, Mr. Schwartz, and East Pennsboro Twp and Cumberland County Officials,

I note first that I have not received any response to my prior emails, either that sent to the East Pennsboro and Cumberland County officials, or the follow up email I sent to you. Therefore, I am enclosing these emails below with a request to these public officials to respond to my questions and requests as a resident of their jurisdictions. Specifically, to my request to be placed on their agenda to discuss matters of ongoing business I have with them.

As you will see, I am also copying to Mr. Peter Bender from Travelers Insurance, who I believe is the insurance agent or adjuster for the Township, so that I am sure that my below offer, which was not acknowledged or responded to by you, is being passed through appropriate channels. I know you and the other lawyers have an interest in billing for your time on these matters, but I know me and my family have an interest in having them resolved, and my below emails outline a very reasonable approach to doing so. I do not want to be engaged in litigation over these matters for years to come, but strongly believe in the things I have said below, and in our legal claims, and will persist in all these things until they are resolved by pursing the underlying case to the US Supreme Court, if necessary.

Therefore, I ask for a response from the Township on the matter of my being placed on the agenda for an upcoming public meeting for me to address these matters, and for them to respond to my other requests that are not part of the federal suit in which you are involved as counsel.

As to this case, I am asking for a concurrence from Mr. Schwartz for a three week enlargement of time in which to respond to the Motion to Dismiss he filed on behalf of Mr. Underhill, until February 29, 2016.

I would also like to know how it is that your firm is representing two separate Defendants in this case, with Mr. Schwartz representing Mr. Underhill, and you, Mr. Carmelite. Representing East Pennsboro, and Defendants Shultz, Dunkle, Kuntzelman, and Hertzler. Is this not a conflict to represent these Defendants separately from the same law firm?

Also, I am planning to file a motion for the recusal of Judge Kane from this case. I believe that she has shown through the responses to my Rule 60(b) motion that she is more interested in protecting her staff like she did with Ms. Cihak, despite the clear improper jury contacts that had gone on in our case in November, 2013, than she is in doing justice in my case, and I think she should be recused. Would you agree to such a motion in light of our pending Writ of Certiorari filing for review by the US Supreme Court in by March 18th?

Lastly, I would like to request that all communications in these matters be preserved. Mr. Underhill's own billing records clearly show that he was in contact with Mr. Autry during the time of my Rule 60(b) proceedings, and I know he was in touch with Karen Dunkle over the issues concerning the State Street property during August 2015. Contacting my former lawyer is a possible violation of the rules of conduct, and of my rights since I have an ongoing right to client confidentiality with Mr. Autry, and his communications with Karen Dunkle, Mr. Shultz, Attorney Coyne, and the Township support the claims I am making that he was involved in planning and orchestrating this ongoing retaliation against me after I filed my Notice of Appeal of the Denial of Rule 60(b) motion since he only represented them in the prior federal case. I am requesting all these communications, and that all written records including but not limited to emails and all to be preserved dating back to 2002, the time Plaintiffs moved to the Twp.

Please provide your responses to my serious inquiries and requests in this email and the email below so I can decide my next course of action accordingly. Our response to the Motion to Dismiss is due Monday, and I will need to get the Motion for Enlargement of Time filed promptly, and also would like to get the Motion for Recusal promptly as well. Therefore, I kindly seek your response by noon today as to whether you concur with me in filing of these motions. If I don't receive your response, I will simply note that it has been requested, and has not been received as of the date of the filing.

Sincerely,
Gnana Chinniah

---

From: Gnana Chinniah
Sent: Wednesday, January 20, 2016 8:52 AM
To: Carmelite, Donald L.; chinniahg@hotmail.com
Cc: Lisa@coyneandcoyne.com; dmacmain@macmainlaw.com; Schwartz, Edwin A.
Subject: RE: Ongoing Legal Matters involving Chinniahs at the State and Federal Courts and Amicable Resolution

Thank you for your email, Mr. Carmelite.

I will, of course, communicate with you about the ongoing legal claims and lawsuits I have against the persons you represent, as much as is required in the context of those suits. I note, however, that I am free to communicate with these public officials about ongoing business I have with East Pennsboro Township and Cumberland County, and that is what I have done by the below email. There are unresolved business matters I have concerning property I own in the Township, and things I want to address in the free exercise of my First Amendment rights with the Township, as I specifically requested.

I do have legitimate business with the Township and the County, and I did make my request very respectfully, your suggestion to the contrary notwithstanding. I understand that you have a business interest in continuing to bill your clients for your work on these cases, and that you have duties as their lawyer, but I believe my communication was a fully appropriate contact with the public officials who have responsibilities to address the ongoing, unresolved, business matters we have with the Township and County. In fact, I suggest your response to me can be construed as a further attempt to interfere with my First Amendment rights.

Do not interpret any of this as an intention to continue to communicate with these persons about the lawsuits, and ongoing legal claims, as I understand and will work with you on matters relating to the litigation. I note significantly, however, that you have not offered one word on your response to the substance of my communication. I asked to be placed on the agenda of a public meeting. I asked for some proposals to resolve an ongoing dispute concerning my properties on Cassat Street. I asked that these matters be forwarded to the insurance carriers. You didn't address any of that.

If you had a real interest in working for the benefit of the Township, and the persons you represent, in an effort to resolve these matters, it seems to me that you would have addressed them. I don't believe you have any authority under any circumstances to control the public agenda of the Township, for example. If you believe you do, please let me know, and if you do, I want to be placed on the agenda of the next public meeting. Are you suggesting that we have some obligation to keep suing in court to address these matters, and have no right to try to resolve these disputes in the context of our relationship with our public officials?

Do you intend to address any of these substantive matters, or do you intend to just continue to drag out this litigation, and bill for your services, and interfere with our attempts in having this ongoing dispute resolved, and the interest of all involved in having them resolved. I think that we, and all of the residents of east Pennsboro Township

have an interest in knowing these things, and having answers to these questions. For the purpose of bringing you up to speed in the underlying lawsuit that you mentioned that as if we lost at the District Court and Third Circuit, I have attached my Brief in Opposition to Defendants' Motion for Summary Judgment and Rule 60(b) Appeal to the Third Circuit and Petition for Rehearing as you will have to become familiar to defend your clients at the US Supreme Court, if you miss the opportunity to settle now. Also, by reading the attched and other relevant documents that I sent you yesterday and those from the files Mr. Underhill and his former clients forwarded to you, you will know who in fact lost serving JUSTICE - it is the US legal system at the cost of we, innocent victims of crooked mentality of lawyers!

Please respond to the substance of my communication, and, for those responsible, please place me on the agenda for the next public meeting, so I can address my ongoing business with the Township, and the County.

Sincerely,
Gnana and Suganthini Chinniah

_____

From: Carmelite, Donald L. [DLCarmelite@MDWCG.com]
Sent: Tuesday, January 19, 2016 4:32 PM
To: chinniahg@hotmail.com
Cc: Lisa@coyneandcoyne.com; dmacmain@macmainlaw.com; Schwartz, Edwin A.
Subject: RE: Ongoing Legal Matters involving Chinniahs at the State and Federal Courts and Amicable Resolution

Mr. Chinniah, I'm in receipt of your email below directed to my clients at East Pennsboro Township. As you know, I represent East Pennsboro Township, Jeff Shultz, Karen Dunkle, John Kuntzelman and Jim Hertzler (in his capacity as a former Twp official). Please do not communicate with my clients directly about this suit or the underlying action – the case you lost at trial and most recently on appeal at the Third Circuit. All communication concerning East Pennsboro, Jeff Shultz, Karen Dunkle, John Kuntzelman and Jim Hertzler (in his capacity as a Twp official) must be directed to me. My contact information is listed below.

If you have legitimate, unrelated business with the Township, you are free make respectful contact with the appropriate Township official.

Thank you for your anticipated cooperation.

DLC


[http://ecard.marshalldennehey.com/media/ecard/mdwcg-ecard-logo.png]

[http://ecard.marshalldennehey.com/media/ecard/spacer.png]

Donald L. Carmelite

Attorney at Law

bio<http://www.marshalldennehey.com/attorneys/donald-l-carmelite> | e-mail<mailto:DLCarmelite@MDWCG.com> | website<http://www.marshalldennehey.com>


100 Corporate Center Drive

Suite 201
Camp Hill, PA 17011

Direct:
Main:
Fax:

(717) 651-3504
(717) 651-3500
(717) 651-3707

This e-mail transmission and any documents, files or previous e-mail messages attached to it, are confidential and
are protected by the attorney-client privilege and/or work product doctrine. If you are not the intended recipient,
or a person responsible for delivering it to the intended recipient, you are hereby notified that any review,
disclosure, copying, dissemination, distribution or use of any of the information contained in, or attached to this e-
mail transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify
me by forwarding this e-mail to DLCarmelite@MDWCG.com<mailto:DLCarmelite@MDWCG.com> , or by telephone
at (717) 651-3504 and then delete the message and its attachments from your computer.

From: Gnana Chinniah [mailto:chinniahg@hotmail.com]
Sent: Tuesday, January 19, 2016 1:12 PM
To: Paul Hartman; CHARLES GELB; John Kuntzelman; KRISTY MAGARO; G. Tyson;
jhertzler@ccpa.net<mailto:jhertzler@ccpa.net>; geichelberger@ccpa.net<mailto:geichelberger@ccpa.net>;
vdifilippo@ccpa.net<mailto:vdifilippo@ccpa.net>
Subject: Ongoing Legal Matters involving Chinniahs at the State and Federal Courts and Amicable Resolution


Dear Commssioners of the East Pennsboro Township and Cumberland County:

Re: Ongoing Legal Matters at the State and Federal Courts and Amicable Resolution

We are writing to address, and attempt to resolve, certain ongoing matters in which we are involved with East
Pennsboro Township, and now, offices of Cumberland County, as well.  Most of these matters are still involved in
ongoing litigation, and we do not feel we need to recite all of the background, but we have enclosed a copy of the
federal civil complaint that we filed on November 23, 2015, which provides a summary of all the matters in which
we are involved, which now includes that new lawsuit.

We also, of course, have been involved in a past federal case against the Township and persons associated with the
Township, and that matter is still pending in the courts.  In fact, we recently received an Order from the federal
Third Circuit Court of Appeals denying relief we requested in that ongoing case, and we have 90 days from the date
of that Order to file for review by the United States Supreme Court of our claims in that case, which we intend to do
as we have very strong legal basis to proceed as we stated in our response to a recent motion for attorneys' fees.

Before we proceed with all of these matters, however, and get embroiled with possibly years more litigation with
the Township, County, and all the individuals involved, we would like to take the opportunity to try to resolve all
these matters, and move forward with a peaceable, cooperative resoluton.  It should be apparent to you, however,

that we will persist through the courts for as long as it takes, and to do what we feel is appropriate, to get our justice which we feel has not been done to this point, but we are patient and faithful people, and believe that true justice will ultimately be done.

When we moved into East Pennsboro Township in 2002, we had hoped that this was going to be where we settled, and that we, like any other American citizen, would be free to pursue our American dream. We have lived peaceably among our neighbors, raised our children here, and established our life here. As part of that, we have purchased other properties in the Township, now owning 9 properties, and have rehabilitated them, and provided safe and affordable housing to many in the Township since 2003.

We were terribly distressed when we encountered the difficulties with Mr. Shultz in 2007, as set out in our prior lawsuit, and learned that other Indian/Hindu residents (the Dr. Kapoors and the Modis) experienced similar mistreatment. We were even further distressed when we learned much later from former Chief of Police McMaster that people in the Township were upset by us, and the fact that we are minorities, and that our efforts to make our community better, and provide for our family were being resisted because it was perceived by the locals as we were changing the "demographic pattern" of the Township by virtue of us being minorities and renting to minorities. Mr. McMaster's suggestion of screening my tenants to please locals is just not acceptable to us, and is what drives our continuing pursuit of our claims.

This thinking was also reflected by the way Mr. McMaster handled the issue of Tex Roadcap threatening us over the property issues. That matter was reported as a threat of physical harm against us, and, we believe, Mr. Roadcap was protected, and the justification of his actions as "freedom of speech" clearly reflects the biased attitude of Mr. McMaster, and the culture of the Township as he stated. In the police incident report of April 15, 2008, the investigating officer, Daniel Hasenauer covered up the identity of Rex Roacap as "Unidentified White Male". This threat incident was precipitated by one or more code enforcement officers of the township breaching the confidentiality of my lawful complaints about the on-going property maintenance violations amounting to "junk yard" appearance of the neighborhood. We still do not go to the property out of the apprehension this has caused, and pay for lawncare maintenance to avoid any possible encounters as the damage to the curbs and illegal parking in our property is ongoing without any enforcement actions by Police or Codes departments of the Township.

Of course, we would also like very much to put all these matters behind us, as we have been frustrated by the court process, and by the lawyers, both ours and the Townships', who have been obstacles to the just and peaceful resolution of our disputes. As you can see, we have included claims against them, as well, for their role in obstructing our efforts, and we will deal with them separately, but wanted to attempt for now to address these matters with you, as the public officials who are ultimately responsible for all of the affairs of the Township and County with whom we have our disputes.

We do not believe that we received fair treatment of our claims in the past, and believe the lawyers worked to limit the evidence of our claims in our federal trial in November of 2013. There was abundant additional evidence to support our claims of discrimination, and even some of the subpoenas we served on Township officials were not enforced, and are sure that the evidence that was kept out would have made all the difference. We also strongly believe that our current status, with the Cassat Street properties still undeveloped, the State Street property now condemned, other properties having inflated assessments, and the CCHRA cutting off our rental income for our Wyncote Court property are a result of the same discrimination we believe we were subjected to in the past, and are being done in retaliation for our past efforts to have our claims addressed. This is why we chose to file the new federal complaint, and we feel strongly that there is merit to our claims. Even the Third Circuit agrees that we are not pursuing these claims in bad faith, as they recently denied Mr. Underhill's request to have sanctions imposed upon us for filing our recent appeal. (See our response filed with the Court)

It is not, however, our intention to litigate the merits of all these matters here, but is our intention to try to put an

end to all of this, so we can move on, and get back to our lives, and the efforts we have taken to improve our lives, and make East Pennsboro Township our home, and a better community. We have paid our taxes, improved the quality of living in the Township, and we even at one point expressed our interest in giving back to the community by donating our efforts through Habitat for Humanity type of initiatives to the poor and elderly to improve the neighborhood, but these efforts were ignored.

This whole saga began with what we believe was the unlawful application of building codes to us that were not applied equally to others in the Township. We did not know it at the time, but believe that this is reflective of the comments made to us by Mr. McMaster. The Cumberland County Court agreed with us by lifting the stop work order that was placed by Mr. Shultz, and others, but this matter has never been resolved. While the federal court jury did not find in our favor, this does not mean that the Township was justified in our treatment at the time. In fact, federal judge Kane said in her summary judgment opinion that the evidence showed that the Township "quite literally applied a double standard" to us primarily due to the fact building code that Mr. Shultz adopted to enforce at our property, PA UCC (2004) is not applicable due to clearly stated exemptions and exclusion of this legal document. PA UCC(2004) is not only inapplicable to our property due the exemptions of this legal document, but also more stringent and different than CABO 1995 that the previous non-Indian Owner, Timothy Mowery was subject to. Moreover, the township tried to enforce a 2007 parking ordinance on increased parking space requirement that was repealed in 2010 to accommodate a non-Indian developer of the 332-Units "Overlook Apartments" that most of you know. This has not been resolved, and our properties on Cassatt Street remain undeveloped, depriving us of the anticipated income from those properties of an estimated $3000 per month over the course of nearly the past nine years.

As to the tax assessment for the Cassat Street property, the prior, non-Indian owner, Mr. Timothy Mowery, was assessed for all 3 properties on one deed; yet, our properties were arbitrarily separately assessed as three parcels, leading to an increase in the assessment from $128,000 to about $290,000, and my payment of taxes on this inflated reassessed value after we filed the Federal lawsuit in 2008.
We also believe that CCHRA has wrongly denied our rents from the 100 Wyncote Street property in Mechanicsburg for the two months, which would have been approximately $10,000 with the losses and legal expenses we have suffered with similar losses to the property at 576 Louther Street in Carlisle.

As to the recent condemnation of the State Street property, we are, again, being deprived of rents as this mater wends its way through the courts, and have recently filed an appeal of that matter, where it is pretty clear that Ms. Dunkle gave conflicting and false testimony in support of the action in that matter during a hearing on 13 October 2015 that most of you and attorneys involved are aware of.
This entire course of conduct has been a considerable disruption on our lives, and has caused us tremendous financial losses, and great aggravation and emotional suffering as well. In addition to all of that, we have expended tens of thousands of dollars on attorneys' fees in attempting to have these matters addressed, and feel they should have been resolved long ago. We do not feel that we have ever done anything wrong to deserve any of what we have been put through, and, even though the courts have not as yet provided us relief, believe that we will ultimately prevail, and, as discussed, want to take this opportunity now to see if there is any way that we can move forward to settle this matter short of continuing with possible years more of litigation.

As you can see, our actual financial losses are in the vicinity of $500,000, and this does not take into consideration all of the additional suffering we have endured for nearly nine years now. We do believe that a jury would recognize what we have been through, and make a substantial award if the case proceeds, and all of the evidence is put forward, and not kept out through questionable actions of attorneys.
We would very much like to have some dialogue with the Board of Commissioners and the Township, preferably in a face-to-face meeting, so we can discuss the possible resolution of these claims. We understand that both the Township and County are, or should be, covered by insurance in these matters, and ask that this be communicated to those carriers, with our proposal for a resolution of these matters for $500,000, together with the removal of the

discriminatory codes application for the Cassat Street property, a fair reassessment of our properties, and the lifting of the condemnation for the State Street property. In exchange, we will agree to withdraw all pending litigation, and to not initiate any more against any of these parties in the future.

We kindly request you to place this matter on your agenda of the next public meeting and discuss this matter with your counsels to expolore the possibility of mediation through a mutually acceptable third party in the best interest of all of us. We look forward to receive a favorable response in the near future so we can resolve this dispute once and for all amicably and focus on our lives without unnecesary distractions.

Sincerely,
Gnana and Suganthini Chinniah