## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GNANA M. CHINNIAH, et al.,

               Plaintiffs,

    v.

EAST PENNSBORO TOWNSHIP, et al.,

               Defendants.

CIVIL ACTION NO. 1:15-CV-02240

(KANE, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

This is a *pro se* action for damages asserting federal and state law claims against several Defendants. (Doc. 1). Currently pending before the Court are four motions to dismiss the complaint of Plaintiffs Gnana and Suganthini Chinniah (the "Chinniahs"). (Doc. 22; Doc. 36; Doc. 40; Doc. 43). For the following reasons, it is recommended that each motion be granted.

I.   **BACKGROUND**

The Chinniahs initiated this civil rights action by filing a fee-paid complaint on November 23, 2015. (Doc. 1). In their complaint, the Chinniahs assert violations of their civil rights under the First, Fourth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, conspiracy under 42 U.S.C. § 1985, and numerous state law claims. The complaint names the following Defendants: East Pennsboro Township, Pennsylvania (the "Township"), Township Building Inspector and Code Enforcement Officer Jeffrey S. Shultz, Township Health & Code Enforcement Officer Karen Dunkle, former Township Commissioner and current Cumberland County, Pennsylvania Commissioner James Hertzler, and Current Township commissioner John Kuntzelman (collectively, the "Township Defendants"); attorney Christopher Underhill and Underhill's firm, the Law Offices of Hartman Underhill & Brubaker (collectively, the

"Underhill Defendants"); attorneys Joshua Autrey and Jeffrey Conrad, along with their firm, the Law Offices of Clymer Musser & Conrad (collectively, the "Clymer Conrad Defendants"); the Cumberland County Tax Claim Bureau (when referred to in conjunction with Hertzler in his capacity as a Cumberland County Commissioner, the "County Defendants"); and the Cumberland County Housing and Redevelopment Authorities.

By way of brief background, in July of 2008 the Chinniahs brought a 42 U.S.C § 1983 civil rights action against the Township and Shultz, alleging that they were the subject of discriminatory enforcement of the Township's zoning laws (the "2008 Lawsuit").[1] (*Chinniah v. E. Pennsboro Twp.*, Case No. 1:08-CV-01330, Doc. 1). The 2008 Lawsuit was tried before a jury with the Chinniahs represented by Attorney Autry of the Law Offices of Clymer Musser & Conrad, and the Township and Shultz represented by Attorney Underhill of the Law Offices of Hartman Underhill & Brubaker. On November 25, 2013, the jury returned a verdict for the Township and Shultz. (*Chinniah v. E. Pennsboro Twp.*, Case No. 1:08-CV-01330, Doc. 255). The Chinniahs terminated counsel and appealed *pro se*. On appeal, the Chinniahs alleged numerous errors, all ultimately rejected by the Third Circuit Court of Appeals for their "clear lack of merit . . . ." *See Chinniah v. E. Pennsboro Twp.*, 602 F. App'x 558, 559 n.1 (3d Cir. 2015) (not

---

[1] In addition to the facts pled in the Chinniahs' complaint, this Court may "also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). Consideration of these materials does not require conversion of a Rule 12(b) motion to dismiss into a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Accordingly, the Court takes judicial notice of the Chinniahs' proceedings before the United States Court of Appeals for the Third Circuit, this Court, the Cumberland County Court of Common Pleas, the Cumberland County Magisterial District Court, and the Township's Board of Health.

precedential). Thereafter, the Chinniahs attempted to reopen the judgment through a motion pursuant to Federal Rule of Civil Procedure 60(b)(6) on a theory of "virtual abandonment" of their trial counsel, which was subsequently denied and affirmed on appeal. *Chinniah v. E. Pennsboro Twp.*, No. 1:08-CV-01330, 2015 WL 10943685, at *2 (M.D. Pa. July 15, 2015), *aff'd sub nom. Chinniah v. Twp. of E. Pennsboro*, 639 F. App'x 89 (3d Cir. 2015) (not precedential). On April 6, 2016, the Chinniahs filed a petition for a writ of certiorari before the Supreme Court of the United States.

In the instant action, the Chinniahs allege many of the same facts set forth in the 2008 Lawsuit. (Doc. 1). They further allege that the Township Defendants continued their pattern of discrimination after the 2008 Lawsuit was filed and also have retaliated by condemning the Chinniahs' rental unit at 493 State Street, in Enola, Pennsylvania (the "State Street Property"). (Doc. 1, at 11). However, the Township Defendants present evidence that the condemnation proceedings were only initiated in August of 2015 upon the filing of a complaint with the Township's Department of Housing and Community Development by Ashley Pearl, the Chinniahs' tenant at the State Street Property, due to broken sewer lines causing flooding in her State Street Property apartment. (Doc. 40-1, at 8-9).  Additionally, the Chinniahs claim that the Underhill Defendants conspired with the Township Defendants in regard to the condemnation of the State Street Property, although the only factual allegations made with respect to this conclusory assertion are that Underhill communicated with the Township Defendants about the State Street Property condemnation proceedings even though he was not representing the Township in that particular matter, and that Underhill sent the Chinniahs a demand letter threatening to seek sanctions in response to the Chinniahs' appeal of the denial of their Rule

60(b) motion shortly before the State Street Property condemnation proceedings began. (Doc. 1, at 11-12, 15-16). Furthermore, the Chinniahs allege that the Clymer Conrad Defendants were also privy to this conspiracy by intentionally providing second-rate representation throughout the 2008 Lawsuit due to their longstanding ties with the Underhill Defendants. (Doc. 1, at 7). In support of this assertion, the Chinniahs allege that Attorney Conrad refused to return legal files and called the police on the Chinniahs when they appeared at Clymer Musser & Conrad's office in October of 2014 looking for the files. (Doc. 1, at 8). Lastly, the Chinniahs claim that the Cumberland County Tax Claim Bureau was manipulated by Hertzler and Kuntzelman into raising the Chinniahs' tax assessment from $128,000 in 2008 to nearly $290,000, once again in retaliation for the 2008 Lawsuit. (Doc. 1, at 9-10).

With the exception of the Cumberland County Housing and Redevelopment Authorities, all named Defendants have moved to dismiss the Chinniahs' complaint, filing four separate motions.[2] Specifically, the Underhill Defendants filed a motion to dismiss (Doc. 22) and brief in support of their motion (Doc. 23) on January 22, 2016; the Clymer Conrad Defendants filed a motion to dismiss the complaint (Doc. 36), together with a brief in support thereof (Doc. 37) on February 12, 2016; the Township Defendants filed a motion to dismiss (Doc. 40), together with a brief in support of the motion (Doc. 41) on February 16, 2016; and

---

[2] After filing an answer on February 16, 2016 (Doc. 42), the Cumberland County Housing and Redevelopment Authorities filed a joint stipulation of dismissal signed by the Chinniahs pursuant to Fed. R. Civ. P. 41(a)(1) on May 24, 2016 (Doc. 70). In their complaint, the Chinniahs had accused the Cumberland County Housing and Redevelopment Authorities of also retaliating against them by failing to pay rent for one of the rental properties owned by the Chinniahs. (Doc. 1, at 10-11).

the County Defendants filed a motion to dismiss (Doc. 43), together with a supporting brief (Doc. 44) on February 19, 2016. These motions have been fully briefed and are now ripe for disposition.

## II.   MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In

deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

A document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## III.   DISCUSSION

### A.   SECTION 1983 CLAIMS

The Chinniahs assert violations of their First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To state a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). The "under color of state law" element of § 1983

excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). "As the 'under color of state law' requirement is part of the prima facie case for § 1983, the plaintiff bears the burden of proof on that issue." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

### 1. Section 1983 Claims Against the Underhill Defendants and the Clymer Conrad Defendants Fail Because they are not State Actors

Here, it is clear that the Underhill Defendants and the Clymer Conrad Defendants are private entities or individuals, not arms of the state. *See, e.g.*, *Shahin v. Darling*, 606 F. Supp. 2d 525, 540 (D. Del. 2009) ("The law firm defendants are not state actors, but rather law firms who represented a defendant in civil actions filed by plaintiff."), *aff'd*, 350 F. App'x 605 (3d Cir. 2009). "A person may be found to be a state actor when (1) he is a state official, (2) he has acted together with or has obtained significant aid from state officials, or (3) his conduct is, by its nature, chargeable to the state." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (quotation omitted). However, "[a]ttorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." *Angelico*, 184 F.3d at 277. Specifically, courts within the Third Circuit "have rejected the theory that a lawyer's role as a solicitor or municipal attorney automatically makes him or her a state official or actor." *Majer v. Twp. of Long Beach*, No. CIV.A.06-2919MLC, 2009 WL 3208419, at *8 (D.N.J. Sept. 30, 2009) (citing *Conklin v. Warrington Twp.*, No. CIV.A. 1:06-CV-2245, 2008 WL 2704629, at *7 n.11 (M.D. Pa. July 7, 2008); *Willis v. Carroll Twp.*, No. 07–949, 2008 WL 644762, at *5 (M.D. Pa. Mar. 5, 2008); *Spradlin v. Bor. of Danville*, No. 02–2237, 2005 WL 3320788, at *3 (M.D. Pa. Dec. 7, 2005), *aff'd*, 188 F. App'x. 149 (3d Cir. 2006); *O'Hanlon v. City of Chester*, Nos. 00–0664 & 00–5617, 2002 WL 393122, at *3 (E.D. Pa. Mar. 12, 2002)).

As noted above, a private individual may—under limited circumstances—be liable under § 1983 if his or her conduct is so closely related to governmental conduct that it can be fairly viewed as conduct of the state itself. *See Mark*, 51 F.3d at 1142–43 (detailing the various tests used to analyze whether private conduct may be treated as state action). The Chinniahs allege that the Underhill Defendants and the Clymer Conrad Defendants are state actors because they were "jointly engaged in unlawful actions" with the Township Defendants. (Doc. 49, at 5); *see also Hynoski v. Columbia Cnty. Redevelopment Auth.*, 941 F. Supp. 2d 547, 562 (M.D. Pa. 2013) ("A private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983."). However, none of the conduct that the Chinniahs attribute to the Underhill and Clymer Conrad Defendants can be fairly viewed as state action, nor have the Chinniahs sufficiently alleged a conspiracy to violate their civil rights.

The Chinniahs claim that Underhill received correspondence from one of the Township Defendants informing him of the State Street Property condemnation proceedings, and that Underhill sent the Chinniahs a demand letter threatening to seek sanctions shortly before the State Street Property condemnation proceedings began. (Doc. 1, at 11-12, 15-16). As a preliminary matter, the Court is skeptical that the forwarded correspondence from the Township Defendants could constitute an "action" on the part of the Underhill Defendants, especially because the Chinniahs do not allege that Underhill took any action on the basis of that correspondence. Indeed, the second "action" that the Chinniahs complain of, Underhill's demand letter, was sent on August 7, 2015, several weeks before he received correspondence from the Township Defendants regarding the State Street Property. (Doc. 1, at 11-12). Even

more importantly, all factual allegations against the Underhill Defendants fall squarely within the realm of an attorney's "traditional functions." *See Angelico*, 184 F.3d at 277. The Chinniahs make much of the fact that Underhill did not represent the Township in regard to the condemnation proceeding specifically, but it is undisputed that the Underhill Defendants represented the Township in the ongoing 2008 Lawsuit at that time. Because the condemnation of the State Street Property potentially fell within the scope of the issues complained of in the 2008 Lawsuit, *i.e.,* allegations that the Township was discriminatorily enforcing local housing laws on the basis of the Chinniahs' ethnicity, any correspondence between Underhill and the Township constituted acceptable attorney-client legal services. *See Willis*, 2008 WL 644762, at *5 ("[A]n attorney cannot be held to have conspired with his or her client when the attorney's actions were conducted within the scope of the attorney-client relationship and 'for the benefit of the client rather than for the attorney's sole personal benefit.'" (quoting *Heffernan v. Hunter*, 189 F.3d 405, 411 (3d Cir. 1999))). Likewise, Underhill's August 7, 2015 demand letter threatening to seek sanctions is also a traditional legal service performed on behalf of the Township and Shultz, rather than something done for the Underhill Defendants' sole benefit. Accordingly, the Chinniahs' factual allegations against the Underhill Defendants involve nothing more than the performance of traditional legal services, and thus do not constitute state action.

The Chinniahs' federal claims against her own attorneys in the 2008 Lawsuit, the Clymer Conrad Defendants, fail for similar reasons. In their complaint, the Chinniahs allege that the Law Offices of Clymer Musser & Conrad had a longstanding relationship with the Law Offices of Hartman Underhill & Brubaker, and that the quality of the representation provided to

the Chinniahs suffered as a result. (Doc. 1, at 7). As evidence of this alleged collusion with the Underhill Defendants, the Chinniahs claim that Autry failed to produce exhibits and call certain witnesses at trial, and that Conrad refused to return legal files when the Chinniahs appeared at the law firm's office looking for them about a year after the jury trial in the 2008 Lawsuit concluded. (Doc. 1, at 7-8). However, as noted above, an attorney or law firm does not become a state actor merely by representing a client in court. *See Angelico*, 184 F.3d at 277. Furthermore, the Chinniahs fail to even assert that the Clymer Conrad Defendants' conduct is so closely related to governmental conduct so that their actions may be fairly viewed as conduct of the state itself. *See Mark*, 51 F.3d at 1142–43. Whereas the Underhill Defendants at least represented the Township in the 2008 Lawsuit and all of its subsequent appeals, the Chinniahs do not aver that the Clymer Conrad Defendants had any relationship with the Township Defendants whatsoever. The Chinniahs' bare assertion that the Clymer Conrad Defendants conspired with state actors is wholly insufficient to survive dismissal at the pleading stage, as the Chinniahs fail to allege any specific facts that could support their conclusory allegation that the Clymer Conrad Defendants had an agreement with either the Township Defendants or the County Defendants to deprive the Chinniahs of their civil rights. *See Coulter v. Allegheny Cnty. Bar Ass'n*, 496 F. App'x 167, 169 (3d Cir. 2012) (not precedential). Accordingly, the § 1983 claims against the Clymer Conrad Defendants also fail for lack of state action.

It is therefore recommended that all § 1983 claims against the Underhill and Clymer Conrad Defendants be dismissed for failure to state a claim.

### 2. Section 1983 Claim Against Hertzler Fails for Lack of Personal Involvement

Defendant James Hertzler argues that any § 1983 claims alleged against him must fail because the Chinniahs have not alleged how he was personally involved in any alleged deprivation of their constitutional rights. (Doc. 44, at 11-12). Under § 1983, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode,* 845 F.2d at 1207. Moreover, "[a] defendant . . . cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v.* McGreevey, 481 F.3d 187, 210 (3d Cir. 2007).

The Chinniahs' complaint is devoid of specific factual allegations of Hertzler's involvement in the alleged constitutional deprivations, as he is barely mentioned throughout the complaint. Indeed, the Chinniahs merely assert that Hertzler "influenced" the Cumberland County Tax Claim Bureau to retaliate against the Chinniahs (presumably by raising their tax assessment), and that he "influenced" the Cumberland County Housing and Redevelopment Authorities to retaliate against the Chinniahs by refusing to pay rent for a property the Authorities leased from the Chinniahs. (Doc. 1, at 10-11). These contentions fall far short of the particularity needed to sustain a § 1983 claim that Hertzler was personally involved in the alleged unconstitutional conduct. The Chinniahs fail to specify what particular actions Hertzler took to "influence" the Cumberland County Tax Claim Bureau, Housing Authority, and

Redevelopment Authority to retaliate against the Chinniahs, and how that "influence" constituted actual knowledge and acquiescence to unconstitutional retaliation. *See Rode,* 845 F.2d at 1207. Accordingly, it is respectfully recommended that the § 1983 claims against Hertzler be dismissed without prejudice for failure to state a claim.

### 3.  Municipal Liability

The Chinniahs assert that the Township and the Cumberland County Tax Claim Bureau are both liable as municipalities under § 1983. (Doc. 1); *Dommel Properties, LLC v. Jonestown Bank & Trust Co.,* No. 1:11-CV-2316, 2013 WL 1149265, at *1 (M.D. Pa. Mar. 19, 2013) (finding that county tax claim bureau is a municipal agency). "On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid,* 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services,* 436 U.S. 658 (1978), the Supreme Court established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Monell,* 436 U.S. at 690. A municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell,* 436 U.S. at 690–91. Thus, to state a § 1983 claim against a municipality, a plaintiff must allege a constitutional injury that was caused when the municipality took action pursuant to a custom or policy. *Collins v. City of Harker Heights,* 503 U.S. 115, 120 (1992); *see also Losch v. Borough of Parkesburg,* 736 F.2d 903, 910 (3d Cir. 1984) ("A plaintiff must identify the challenged policy,

attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered."). However, regardless of any policy or practice that may be adopted, municipal liability under *Monell* requires an underlying constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989).

Here, the Chinniahs assert that they have sufficiently alleged a municipal liability claim against the Township and the Cumberland County Tax Claim Bureau, but they fail to identify the specific policy, custom, or practice of either municipal entity that purportedly caused the constitutional deprivation(s). Although the Chinniahs refer to several alleged instances of unconstitutional conduct on the part of the Township, they do not link this conduct to any specific Township custom or policy. Instead, they make the conclusory assertion that the Township's "practice at issue meets the definition of a 'custom' insofar as it is widespread, permanent, and settled, and was a moving force behind the violations of the of the [Chinniah]s' rights at issue."[3] (Doc. 57, at 11). The Chinniahs' allegations as to the Township's *Monell*

---

[3] The Chinniahs perhaps come closest to articulating a Township custom or policy by reasserting their claim from the 2008 Lawsuit that the Township selectively enforces its own rules and regulations against minorities. (Doc. 1, at 10). However, this allegation is factually deficient in that the Chinniahs fail to describe past instances of the Township's supposed discriminatory enforcement of local regulations. *See Losch*, 736 F.2d at 911. ("A policy cannot ordinarily be inferred from a single instance of illegality . . . ."). Moreover, as noted by the Township Defendants, the Chinniahs' discriminatory enforcement claim against the Township was already adjudicated on the merits during the 2008 Lawsuit, with the Township prevailing. (*Chinniah v. E. Pennsboro Twp.*, Case No. 1:08-CV-01330, Doc. 266). Accordingly, the Chinniahs are precluded from re-raising the same argument pursuant to the doctrines of res judicata and collateral estoppel. *See United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009) (describing the requirements and preclusive effect of the two doctrines).

liability are plainly insufficient. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) ("Mere assertion of an entitlement to relief, without some factual 'showing,' is insufficient under Fed. R. Civ. P. 8(a)(2)."); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). In regard to the Cumberland County Tax Claim Bureau, the Chinniahs merely allege that the Bureau increased the Chinniahs' tax assessment from $128,000 to nearly $290,000 at the Township Defendants' urging in retaliation for the 2008 Lawsuit. (Doc. 1, at 9). However, the Chinniahs fail to link this increase to any custom or policy on the part of the Cumberland County Tax Claim Bureau, and thus have not made out the essential elements of a municipal liability claim against the Bureau. *See Losch*, 736 F.2d at 910. Accordingly, it is recommended that all § 1983 claims against the Township and the Cumberland County Tax Claim Bureau be dismissed without prejudice for failure to state a claim.

### 4. Section 1983 Claims on the Merits

#### a. First Amendment Access to the Courts Claim

The Chinniahs allege that "some of the[ ] Defendants" combined to deny the Chinniahs their right of access to the courts during the 2008 Lawsuit. (Doc. 1, at 2). "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983). However, a litigant's right of access to the courts is not violated unless he alleges an actual injury to his ability to litigate a claim. *See Lyons v. Sec'y of Dep't of Corr.*, 445 F. App'x 461, 464 (3d Cir. 2011) (not precedential) ("[W]here an inmate does not allege an actual injury to his ability to litigate a claim, his constitutional right of access to the courts has not been violated."). Furthermore, "[a]n actual injury is shown only where a nonfrivolous, arguable claim is lost." *Lyons*, 445 F.

App'x at 464. Where, as is the case here, a plaintiff asserts a backward-looking claim based on the loss of an earlier case, that plaintiff must "describe the official acts frustrating the litigation" of the earlier case. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

In the case at bar, the Chinniahs assert a backward-looking access to the courts claim, arguing that certain unspecified Defendants contributed to their loss in the 2008 Lawsuit. This claim falls short in multiple respects. First, it is unclear which, if any, of the remaining potential Defendants to a § 1983 action the Chinniahs assert this claim against. As noted above, the Underhill Defendants and Clymer Conrad Defendants—whom the Chinniahs appear to blame most for their lack of success in the 2008 Lawsuit—are not state actors for the purpose of § 1983. At one point in their complaint, the Chinniahs assert that Hertzler and Kuntzelman failed to appear for trial during the 2008 Lawsuit, but the Chinniahs do not aver that these Defendants' failure to appear constituted an actual injury to their ability to litigate the 2008 lawsuit. (Doc. 1, at 10); *see Lyons*, 445 F. App'x at 464. Even if the Chinniahs had claimed that Hertzler and Kuntzelman's failure to appear actually hindered their efforts to prosecute the 2008 Lawsuit, the *de minimus* inconvenience of these witnesses' failure to appear for trial does not rise to the level of a constitutional violation. *See Kirk v. Simpson*, 35 F.3d 566 (6th Cir. 1994) ("[A]ccess to the court do[es] not guarantee that a plaintiff will receive a perfect trial in all aspects. . . . [T]he district court is not required to ensure that the plaintiff is able to present his case completely to the court." (citation omitted)). Moreover, the procedural history of the 2008 Lawsuit belies the Chinniahs' argument that they have been denied the ability to actually litigate their claims, as the case was tried before a jury to verdict and the Chinniahs have continued aggressively litigating their case *pro se* after the entry of judgment by filing a Rule

60(b) motion and several appeals. Simply put, there is no basis upon which one could conclude that Defendants committed an official act that caused the Chinniahs to lose access to the courts. It is therefore recommended that the Chinniahs' access to the courts claim be dismissed with prejudice.

### b.  First Amendment Retaliation Claim

Much of the Chinniahs' complaint is devoted to claims that various Defendants retaliated against the Chinniahs for their filing and prosecution of the 2008 Lawsuit. Specifically, the Chinniahs allege that Kuntzelman "influenced" the Cumberland County Tax Claim Bureau and the Cumberland County Housing and Redevelopment Authorities to retaliate against the Chinniahs by raising their property tax assessment and refusing to pay rent for a property the Authorities leased from the Chinniahs, respectively, and that Dunkle retaliated against the Chinniahs by condemning the State Street Property. (Doc. 1, at 10-11). Although the Chinniahs argue that they have been subject to acts of retaliation by various additional Defendants, they either fail to specify the individual Defendants personally involved in the retaliation or assert claims against individuals and entities that are not proper defendants to a § 1983 action, as noted above. "To establish a claim for retaliation contrary to the First Amendment, a plaintiff must show: (1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." *Brightwell v. Lehman,* 637 F.3d 187, 194 (3d Cir. 2011). An action amounts to retaliation if the conduct is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart,* 436 F.3d 165, 170 (3d Cir. 2006) (quotation marks and citation omitted).

- 16 -

The Chinniahs' complaint, as pleaded, is insufficient to state a claim of retaliation against either Kuntzelman or Dunkle. At the outset, the Court notes that the Chinniahs "consistently display a preternatural, global, subjective sensitivity to alleged retaliation, . . . ascribing some retaliatory motive to virtually every action that occurs . . . ." *Smith v. Price*, No. 3:11-CV-1581, 2012 WL 6541008, at *17 (M.D. Pa. Nov. 21, 2012), *report and recommendation adopted,* No. 3:11-CV-1581, 2012 WL 6553651 (M.D. Pa. Dec. 14, 2012). Although the filing and prosecution of the 2008 Lawsuit is protected by the First Amendment, *see Dougherty*, 282 F.3d at 91, the Chinniahs fail to allege sufficient facts to plausibly demonstrate that this civil case was a substantial motivating factor in any adverse actions subsequently taken by Kuntzelman and Dunkle. Instead, the Chinniahs attempt to "tie disparate events, committed by different actors, together into a seamless web of retaliation," by arguing that the entire eight-year pendency of the 2008 Lawsuit is one ongoing constitutionally-protected activity and inferring that any adverse actions taken by the Township Defendants during this period therefore must evince retaliation. (Doc. 57, at 6-7); *Brown v. Varner*, No. 3:11-CV-1258, 2013 WL 4591817, at *15 (M.D. Pa. Aug. 28, 2013).

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 503–04 (3d Cir. 1997); *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920–21 (3d Cir. 1997)). "Courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks, months or years separated the

plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation."

*Victor v. Huber*, No. 3:12-CV-282, 2012 WL 2564892, at *9 (M.D. Pa. Feb. 28, 2012) (citing

*Killen v. N.W. Human Servs., Inc.,* No. 06–4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7,

2007) (seventeen days insufficient to establish causation); *Smith v. ABF Freight Sys., Inc.,* No. 04–

2231, 2007 WL 3231969, at *11 (M.D. Pa. Oct. 29, 2007) (one and one-half months insufficient

to establish causation); *Mar v. City of McKeesport,* No. 05–19, 2007 WL 2769718, at *4 (W.D. Pa.

Sept. 20, 2007) (three months insufficient to establish causation); *Fischer v. Transue,* No. 04–

2756, 2008 WL 3981521, *10 (M.D. Pa. Aug. 22, 2008) (three weeks insufficient to establish

causation)). In the absence of such proof, a plaintiff must show that the "evidence gleaned from

the record as a whole" provides an inference of causation. *DeFlaminis,* 480 F.3d at 267 (citing

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). Thus, the temporal proximity

of a retaliatory act to the protected activity is probative, but not dispositive, of causation.

      Here, the facts as pleaded in the Chinniahs' complaint simply do not permit a reasonable

inference of retaliation by Kuntzelman or Dunkle. First, it appears that several years elapsed

between the filing of the 2008 Lawsuit and the alleged adverse actions that form the basis of the

Chinniahs' retaliation claims: (1) Dunkle's condemnation of the State Street Property on

August 26, 2015, and (2) Kuntzelman's "influencing" of the Cumberland County Tax Claim

Bureau to raise property tax assessments and of the Cumberland County Housing and

Redevelopment Authorities to refuse to pay rent for June and July of 2015.[4] "Where years have

---

[4] The Chinniahs do not specify when the tax assessments increased, but indicate that
they appealed the increase in 2011. (Doc. 1, at 9).

passed between the events that a plaintiff seeks to circumstantially link together, the logical causal connection that is essential to a retaliation claim simply fails." *Victor*, 2012 WL 2564892, at *9 (citing *DeFranco v. Wolfe,* 387 F. App'x 147 (3d Cir. 2010) (not precedential)). The Chinniahs attempt to circumvent the lack of temporal proximity between the filing of the 2008 Lawsuit and the allegedly retaliatory conduct by pointing to other filings throughout their years of litigation, including the Rule 60(b) motion filed in June of 2015, as further examples of constitutionally protected conduct. (Doc. 57, at 6-7). This argument fails, as the Third Circuit has explicitly warned that courts "must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate." *DeFlaminis,* 480 F.3d at 267. Heeding the Third Circuit's warning, this Court rejects the Chinniahs' contention that the entire duration of the 2008 Lawsuit constitutes one continuous period of protected activity, as to find otherwise would have the chilling effect of potentially insulating the Chinniahs "from actions adverse to [them] that [the Township and its officials] should take." *DeFlaminis,* 480 F.3d at 267; *see also Mayer v. Gottheiner*, 382 F. Supp. 2d 635, 659–60 (D.N.J. 2005) ("[T]he mere fact [plaintiff] was contesting tickets and filing Notices of Tort Claims does not immunize plaintiff from penalties for violating Borough Ordinances, nor does it automatically give rise to a constitutional violation for any subsequent adverse municipal actions against him."). In light of the prolonged duration of the 2008 Lawsuit, it would be impractical to assume a retaliatory motive for any adverse municipal actions that happen to fall in close proximity to the Chinniahs' latest filing. Accordingly, the Chinniahs have failed to establish a temporal proximity or pattern of

antagonism to suggest a causal link between their 2008 Lawsuit and the alleged retaliatory actions.

In addition to the lack of temporal proximity, the other circumstances surrounding the 2008 Lawsuit and the alleged retaliatory actions indicate a lack of causal connection. Neither Kuntzelman nor Dunkle were named as defendants to the 2008 Lawsuit, and courts traditionally have displayed skepticism of retaliation claims against individuals who were not named in a plaintiff's earlier constitutionally-protected action. *See, e.g., Victor v. Lawler*, No. 3:07-CV-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010) (collecting cases), *aff'd*, 565 F. App'x 126 (3d Cir. 2014); *Evans v. Rozum*, No. CIV.A. 07-2301, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) (holding that because plaintiff's pending lawsuit was not filed against the moving defendants, "there is no apparent reason why [the moving defendants] would want to retaliate against [p]laintiff for filing a lawsuit against others"). Accordingly, the Chinniahs' First Amendment retaliation claims, as pleaded, fail to state a claim upon which relief may be granted, as the factual allegations do not provide a basis from which an inference of causation could be drawn.[5] It is therefore recommended that the Chinniahs' retaliation claims be

---

[5] Alternatively, in regard to Kuntzelman, the Chinniahs fail to sufficiently plead that Kuntzelman ever took adverse action by "influencing" the Cumberland County Tax Claim Bureau and the Cumberland County Housing and Redevelopment Authorities to retaliate against the Chinniahs by raising their property tax assessment and refusing to pay rent for a property the Authorities leased from the Chinniahs, respectively. The vague allegation that Kuntzelman merely "influenced" these County agencies is simply not enough to establish that he was personally involved in an adverse action against the Chinniahs. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."); *Rode*, 845 F.2d at 1207 ("Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity.").

dismissed without prejudice.

### c. Fourteenth Amendment Equal Protection Claim

The Chinniahs next allege that they are discriminated against on the basis of their ethnicity, religion, and national origin through the Township's alleged selective enforcement of local codes and regulations against minority property owners. (Doc. 1, at 2, 9). The Equal Protection Clause of the Fourteenth Amendment prohibits state officials from exercising their discretionary authority for an intentionally discriminatory purpose. *See Johnson v. Anhorn*, 416 F. Supp. 2d 338, 375 (E.D. Pa. 2006). Thus, "selective prosecution may constitute illegal discrimination even if the prosecution is otherwise warranted." *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 425 (3d Cir. 2003). There are two theories by which a plaintiff may establish an equal protection claim: the traditional theory and the class-of-one theory. *Keslosky v. Borough of Old Forge*, 66 F. Supp. 3d 592, 614 (M.D. Pa. 2014). Under the traditional theory, a "plaintiff must allege: (1) that he or she is a member of a protected class; and (2) that the government treated similarly situated individuals outside of the protected class differently." *Reed v. Chambersburg Area Sch. Dist.*, 951 F. Supp. 2d 706, 716 (M.D. Pa. 2013). Alternatively, to state a claim under the class-of-one theory, "a plaintiff must allege that: '(1) defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment.'" *Reed*, 951 F. Supp. 2d at 716 (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)). In the case at bar, the Chinniahs proceed under the traditional theory. (Doc. 1, at 9).

The Chinniahs appear to assert their equal protection claim only against the Township itself, as the complaint contains no allegations of personal involvement in discriminatory

treatment on the part of individual Township officials. (Doc. 1, at 9-10). However, as noted above, the Chinniahs fail to establish a *Monell* liability claim against the Township. The Chinniahs' equal protection claim in the case at bar is largely duplicative of the same claim in their 2008 Lawsuit, which was adjudicated on the merits with the Township ultimately prevailing after a jury trial. (*Chinniah v. E. Pennsboro Twp.*, Case No. 1:08-CV-01330, Doc. 266). To the extent that the Chinniahs now try to reassert this same equal protection claim based on many of the same factual assertions as the ones that were made in the 2008 Lawsuit, they are barred from doing so under the doctrine of collateral estoppel, also commonly referred to as issue preclusion.[6] "Collateral estoppel . . . requires of a previous determination that '(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.'" *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009) (quoting *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir.2006)). Here, the Court finds that the Township's alleged discriminatory practices that were raised in the 2008 Lawsuit again form the factual underpinnings of the Chinniahs' current equal protection claim; those practices were actually litigated at trial; the jury's

---

[6] The Court finds that collateral estoppel, as opposed to res judicata (also known as claim preclusion), is the appropriate preclusion doctrine to apply in the case at bar because it liberally construes the Chinniahs' current equal protection claim as differing at least somewhat from the claim that was asserted in the 2008 Lawsuit. (Doc. 1, at 2 ("[T]he prior discriminatory actions against [the Chinniahs] have been perpetuated, i.e., they continue to be subjected to the same discriminatory practices of which they complained in 08-CV-1338 . . . .")); *see Walzer v. Muriel, Siebert & Co.*, 221 F. App'x 153, 156 (3d Cir. 2007) (not precedential) (noting that collateral estoppel is a "narrower species" of preclusion doctrine because it only applies to issues actually litigated and determined in the prior action).

determination that the practices did not constitute discrimination was necessary to the verdict; and the Chinniahs were fully and fairly represented in the prior action. (*Chinniah v. E. Pennsboro Twp.*, Case No. 1:08-CV-01330, Doc. 264). Because the Township's alleged discriminatory practices that were addressed in the 2008 Lawsuit were conclusively found to be nondiscriminatory, the Chinniahs cannot rely on those same practices to bring another equal protection claim in the case at bar.

To the extent that the Chinniahs allege that they have been subject to additional discriminatory practices that occurred after the filing of the 2008 Lawsuit, they claim that these are a continuation of the same Township practices that were found to be nondiscriminatory at the conclusion of the jury trial in the 2008 Lawsuit. (Doc. 1, at 2 ("[T]he prior discriminatory actions against [the Chinniahs] have been perpetuated, i.e., they continue to be subjected to the same discriminatory practices of which they complained in 08-CV-1338 . . . .")). However, "[t]he cumulative effect of each non-error does not rise to constitutional error; as the saying goes, zero plus zero equals zero." *United States v. Powell*, 444 F. App'x 517, 522 (3d Cir. 2011) (not precedential). Thus, the Township's alleged continuation of practices that have already been found nondiscriminatory simply cannot give rise to an equal protection claim. It is therefore recommended that the Chinniahs' equal protection claim be dismissed with prejudice for failure to state a claim.

d.   Fourth Amendment Illegal Search Claim

The Chinniahs' remaining § 1983 claims arise directly from the condemnation of the State Street Property. The Chinniahs allege that Dunkle violated their Fourth Amendment right to be free from illegal searches by entering onto their State Street Property. (Doc. 1, at 11).

Dunkle, on the other hand, claims that the Chinniahs enjoyed no reasonable expectation of privacy in the State Street Property because they were merely landlords who had rented the property to tenants, and that a tenant consented to Dunkle's entry. (Doc. 41, at 18-19). In their brief in opposition to the Township's motion to dismiss, the Chinniahs assert that they "stored private items" at the State Street Property despite renting it out to tenants, and argue that the issue of consent is a question of fact not suited for resolution at the motion to dismiss stage. (Doc. 57, at 12). Dunkle then filed a reply brief, asserting that in addition to the defense of consent, her warrantless entry onto the State Street Property was not illegal because the public interest permits warrantless entries onto private property during emergency situations, as was the case here due to the raw sewage backup at the State Street Property. (Doc. 62, at 9-10).

"Fourth Amendment standing 'requires that the individual challenging the search have a reasonable expectation of privacy in the property searched . . . and that he manifest a subjective expectation of privacy in the property searched[.]'" *United States v. Kennedy*, 638 F.3d 159, 163 (3d Cir. 2011) (alteration in original) (quoting *United States v. Baker*, 221 F.3d 438, 441 (3d Cir. 2000), *as amended* (Sept. 21, 2000)). An individual's expectation of privacy is objectively reasonable if society is prepared to recognize it as reasonable. *See Bond v. United States*, 529 U.S. 334, 338 (2000). The subjective prong, on the other hand, requires the individual to "exhibit[] an actual expectation of privacy . . . [by] show[ing] that 'he [sought] to preserve [something] as private.'" *Bond*, 529 U.S. at 338 (alterations in original) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). Furthermore, "[t]he Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). Consensual searches conducted after the government has been given

permission to do so, *Jimeno*, 500 U.S. at 250-51, as well as searches compelled by "the exigencies of the situation," *Mincey v. Arizona*, 437 U.S. 385, 394 (1978), are two forms of warrantless searches accepted by society as reasonable.

Even assuming, *arguendo*, that the Chinniahs maintained a reasonable expectation of privacy in the State Street Property despite renting it out to tenants, Dunkle has conclusively established that the search was reasonable as a matter of law. Attached as exhibits to their motion to dismiss, the Township Defendants provide the administrative record of the State Street Property condemnation proceedings before the Township's Board of Health and a copy of a civil complaint filed by the State Street Property tenant against the Chinniahs before the Cumberland County Magisterial District Court.[7] (Doc. 40-1; Doc. 40-2; Doc. 40-3). Included among the administrative record is a copy of a complaint form that the State Street Property tenant filed with the Township's Department of Housing and Community Development on August 24, 2015, in which the tenant complained of flooding from broken sewer lines and alleged that the Chinniahs refused to address the issue, thus precipitating Dunkle's visit to the State Street Property. (Doc. 40-1, at 58). As an occupant of the State Street Property, the tenant had authority to grant consent to search the premises. *See United States v. Matlock,* 415 U.S. 164, 169 (1974) ("[V]oluntary consent of any joint occupant of a residence to search the premises jointly occupied is valid against the co-occupant . . . ."). Thus, without determining the accuracy of the specific allegations contained in the tenant complaint, this Court finds that the

_____

[7] As noted above, these exhibits are all matters of public record that this Court may take judicial notice of in deciding the instant motion to dismiss. *See Schmidt*, 770 F.3d at 249; *Oshiver*, 38 F.3d at 1384-85 n.2.

tenant's act of filing a complaint with the Board of Health alleging that her dwelling was flooded with sewage rendered Dunkle's subsequent search of the State Street Property reasonable as a matter of law. *See Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 539–40 (1967) ("[W]arrants should normally be sought only after entry is refused *unless there has been a citizen complaint* or there is other satisfactory reason for securing immediate entry.") (emphasis added); *U.S. v. Roheig*, 98 F.3d 1506, 1521-25 (6ᵗʰ Cir. 1996) (holding that warrantless entry did not violate owner's Fourth Amendment rights because the entry was based on complaint of citizen neighbors responding to the loud noises emanating from owner's home); *Piekarczyk v. City of Chicago ex rel Daley*, No. 04 C 7935, 2006 WL 566449, at *6 (N.D. Ill. Mar. 3, 2006) ("[I]t was reasonable for the building inspector responding to a tenant's complaint, and invited in by such tenant, to inspect the building without a warrant . . . ."). Because Dunkle's entry onto the State Street Property and subsequent search was inherently reasonable under the consent and exigency exceptions to the warrant requirement in light of the tenant's complaint of flooding from broken sewer lines, it is respectfully recommended that the Chinniahs' Fourth Amendment illegal search claim be dismissed with prejudice. *See, e.g., Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013) ("A variety of circumstances may give rise to an exigency sufficient to justify a warrantless search, including law enforcement's need to provide emergency assistance to an occupant of a home . . . .").

e. Fourteenth Amendment Procedural Due Process Claim

In their final § 1983 claim, the Chinniahs allege that the Township Defendants violated their Fourteenth Amendment right to procedural due process in carrying out the State Street Property condemnation proceedings. (Doc. 1, at 11). "To state a claim under § 1983 for

- 26 -

deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006). In order to prevail on a claim for the deprivation of due process, "a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Therefore, a due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

Here, the deprivation that the Chinniahs refer to is the condemnation of the State Street Property. (Doc. 1, at 11). The Township Defendants freely admit that the State Street Property "was condemned before a hearing took place," and that ordinarily, "a hearing should be provided before the government deprives a person of property." (Doc. 41, at 19 (citing *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008)). "Nonetheless, . . . in special circumstances, a state may satisfy the requirements of procedural due process merely by making available 'some meaningful means by which to assess the propriety of the State's action at some time after the initial taking.'" *Elsmere Park Club*, 542 F.3d at 417 (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981) *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). Examples of these special circumstances in which the need for a predeprivation hearing is excused include "[w]here there is 'the necessity of quick action by the State,' or where 'providing any meaningful predeprivation process' would be impractical . . . ." *Elsmere Park Club*, 542 F.3d at 417 (quoting *Parratt*, 451 U.S. at 539).

The Township Defendants assert that this exigency exception is applicable to the case at bar, and thus justified the lack of predeprivation process. (Doc. 41, at 20-21). The Third Circuit has reasoned that "where there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist. . ., the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." *Elsmere Park Club*, 542 F.3d at 418. Here, the Township Defendants clearly had competent evidence that an emergency existed due to the tenant's complaint filed with the Township's Board of Health alleging flooding from broken sewer lines at the State Street Property, and they cannot be said to have acted arbitrarily or abused their discretion given the public health threat posed by raw sewage. (Doc. 40-1, at 58). Accordingly, the Township Defendants' decision to take action prior to conducting a predeprivation hearing was warranted. *See, e.g., Brick City Grill, Inc. v. City of Newark*, No. 14-4491 (KSH) (CLW), 2016 WL 1260019, at *4 (D.N.J. Mar. 30, 2016) (holding that confiscation of bar's liquor license after a nearby shooting was permissible under the emergency exception even though an investigation that ultimately cleared the bar of any responsibility had not been completed).

Even though this Court finds that the lack of predeprivation process was justified, the Township Defendants still were required to provide the Chinniahs with adequate postdeprivation process. *Elsmere Park Club*, 542 F.3d at 420. The Township Defendants argue that they provided the Chinniahs with adequate process, and attach the administrative record of the postdeprivation condemnation hearing conducted by the Board of Health (Doc. 40-1; Doc. 40-2; Doc. 41, at 21), and the Chinniahs do not dispute that they participated in the Board of Health proceedings (Doc. 57, at 3). Because the procedures available to the Chinniahs did not

deprive them of due process of law in light of the emergency situation, it is recommended that the Chinniahs' procedural due process claim be dismissed with prejudice.

     B. SECTION 1985 CLAIMS

     In addition to their § 1983 claims, the Chinniahs also allege an unconstitutional conspiracy in violation of 42 U.S.C. § 1985 against all Defendants. "Unlike its counterpart 42 U.S.C. § 1983, there is no requirement that the deprivation of rights [under § 1985] must occur under color of state law." *Ammlung v. City of Chester*, 355 F. Supp. 1300, 1305 (E.D. Pa. 1973), *aff'd*, 494 F.2d 811 (3d Cir. 1974). Specifically, the Chinniahs appear to allege a conspiracy under § 1985(2) and (3). "Section 1985(2) provides a cause of action against those who conspire 'for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws.'" *Tarapchak v. Lackawanna Cty.*, No. CV 15-2078, 2016 WL 1246051, at *7 (M.D. Pa. Mar. 24, 2016) (quoting 42 U.S.C. § 1985(2)). Section 1985(3) "permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)). To state a claim under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."

*United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29

(1983). Under either subsection, though, a plaintiff "must allege 'some racial, *or perhaps otherwise class-based,* invidiously discriminatory animus behind the conspirators' action' in order to state a claim." *Farber*, 440 F.3d at 135 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see also Tarapchak*, 2016 WL 1246051, at *7.

"[I]t is a longstanding rule in the Third Circuit that a mere general allegation or averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient to state a claim." *Deangelo v. Brady*, 185 F. App'x. 173, 175 (3d Cir. 2006) (not precedential). Thus, as noted in *Twombly*, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). *Twombly*, 550 U.S. at 556-57. Instead, "[t]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Coulter v. Ramsden*, 510 F. App'x 100, 103 (3d Cir. 2013) (not precedential). "A plaintiff must make specific factual allegations of combination or understanding among all, or any, of the defendants to plot, plan or conspire to carry out the alleged chain of events. Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose will be deemed sufficient. *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000) (quotations and citations omitted). Moreover, "[t]o constitute a conspiracy, there must be a 'meeting of the minds.'" *Startzell v. City of Phila., Pa.*, 533 F.3d 183, 205 (3rd Cir. 2008); *see also Twombly*, 550 U.S. at 556 (requiring "enough factual matter (taken as true) to suggest that an agreement was made"). In the case at bar, the Chinniahs fail to allege non-conclusory, well-pled

factual allegations that Defendants formed a conspiracy to deprive them of their rights sufficient to "raise [their] right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

This Court finds that the allegations in the Chinniahs' complaint and all reasonable inferences drawn therefrom fail to state a conspiracy claim. First, the complaint lacks supporting allegations of an agreement among all Defendants, and does not provide a basis for alleging the participation of each Defendant. *See Deangelo*, 185 F. App'x at 175–76. As instructed by the Supreme Court in *Iqbal*, this Court sets aside the Chinniahs' conclusory allegations that there was a "coordinated plan" (Doc. 1, at 12) or "a conspiracy" (Doc. 1, at 12, 13) in place between all Defendants. *Iqbal*, 556 U.S. at 679. Indeed, the Chinniahs baldly "attempt[] to attribute every alleged misdeed of each Defendant to all Defendants, by alleging that they were all engaged in a conspiracy." *Estate of Oliva v. New Jersey*, 579 F. Supp. 2d 643, 678 (D.N.J. 2008), *aff'd sub nom. Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788 (3d Cir. 2010); *see also Flanagan v. Shively*, 783 F. Supp. 922, 933 (M.D. Pa. 1992) ("The amended complaint focuses on the conduct of only a few of the twenty-three defendants, and the allegations against them are insufficient to support a plaintiffs' claims of a far-flung conspiracy to deprive him of his constitutional rights."), *aff'd*, 980 F.2d 722 (3d Cir. 1992) (table). The Chinniahs "fail[] to allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement . . . , the period of the conspiracy, or the object of the conspiracy." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178–79 (3d Cir. 2010).

The limited specific factual averments in the complaint simply do not support a finding of an agreement among all Defendants, as the Chinniahs at most allege parallel conduct, noting

that "[t]he timing of [Underhill's demand letter] in conjunction with the timing of the condemnation of the . . . State Street [P]roperty, in further conjunction with the [Cumberland County Housing and Redevelopment Authorities rental payment] issues further supports the Plaintiffs' contention that this entire course of conduct is part of a conspiracy . . . ." (Doc. 1, at 12). However, the Supreme Court in *Twombly* has noted that allegations of parallel conduct does not "nudge[] . . . claims across the line from conceivable from plausible" where there is an "obvious alternative explanation" for the parallel conduct and "no reason to infer that [Defendants] agreed among themselves to do what was only natural anyway . . . ." *Twombly, 550 U.S. at 566-67, 570*. Such an "obvious alternative explanation" exists here, as noted above in regard to the Chinniahs' First Amendment retaliation claim. Furthermore, the Chinniahs' allegations of collaboration between the Township Defendants and the Underhill Defendants fails to evince a conspiracy because "the intracorporate conspiracy doctrine bans claims against attorneys based on conspiracies formed in the attorney-client context." *Evans v. Chichester Sch. Dist.*, 533 F. Supp. 2d 523, 529 (E.D. Pa. 2008) (citing *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999)). The Court finds that all factual allegations involving the Underhill Defendants in the complaint fall squarely within the scope of Underhill's representation of the Township and Shultz during the 2008 Lawsuit and thus cannot support the Chinniahs' conspiracy claim. Furthermore, in addition to the insufficient allegations that there was a "meeting of the minds" between the Defendants, the Court also cannot infer from the complaint that Defendants had the requisite intent to deprive the Chinniahs of a constitutional right. *See Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 223–24 (3d Cir. 2015) ("[A] defendant cannot be liable under § 1985 or § 1986 unless the defendant had some awareness of the underlying violation."). Given

- 32 -

these many pleading deficiencies, it is respectfully recommended that the Chinniahs' § 1985 conspiracy claim be dismissed without prejudice for failure to state a claim.

### C. STATE LAW CLAIMS

The Chinniahs also assert a number of state law claims against the Underhill and Clymer Conrad Defendants. (Doc. 1, at 13-16). Where a district court has dismissed all claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. As this Court finds nothing in the record to distinguish this case from the ordinary one, the balance of factors "point toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n.7. It is therefore recommended that the Chinniahs' state law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

### D. LEAVE TO AMEND

The Third Circuit has instructed that district courts generally must permit a curative amendment if a complaint is vulnerable to dismissal for failure to state a claim. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). However, "[a] district court properly refuses leave to amend if an amendment would be 'inequitable or futile.'" *Kitko v. Young*, 575 F. App'x 21, 27 (3d Cir. 2014) (not precedential) (quoting *Grayson*, 293 F.3d at 108), *cert. denied*,

135 S. Ct. 1403 (2015). Accordingly, it is recommended that the Chinniahs be given the opportunity to file one amended complaint that is complete in all respects. An amended complaint must be a pleading that stands by itself without reference to the original complaint. *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). The amended complaint should specify the claims the Chinniahs wish to bring, who they wishes to allege each claim against, and the specific facts that show each Defendant's liability for each claim. *Boyd v. New Jersey Dep't of Corr.*, 583 F. App'x 30, 32 (3d Cir. 2014) (not precedential), *cert. denied*, 135 S. Ct. 2374 (2015). In regard to their § 1983 claims, the Chinniahs must aver facts indicating the personal involvement of each state actor in the alleged wrongdoing. *See Rode,* 845 F.2d at 1207. Furthermore, for the § 1983 claims against the municipal Defendants, the Chinniahs must identify the specific policy, custom, or practice of either municipal entity that purportedly caused the constitutional deprivation(s). In regard to their § 1985 conspiracy claim, the Chinniahs must allege specific facts to "address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis,* 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). However, the Court does not recommend granting leave to amend with respect to the Chinniahs' access to the courts, equal protection, illegal search, and procedural due process claims because Defendants' alleged conduct simply does not amount to a violation of these constitutional rights, and therefore granting leave as to these particular claims would be futile.

## IV.    RECOMMENDATION

Based on the foregoing, it is recommended that:

1.  All of the Defendants' motions to dismiss (Doc. 22; Doc. 36; Doc. 40; Doc. 43) be **GRANTED**;

2.  The Chinniahs' access to the courts, equal protection, illegal search, and procedural due process claims be **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

3.  The Chinniahs' retaliation and 42 U.S.C. § 1985 conspiracy claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

4.  All state law claims be **DISMISSED WITHOUT PREJUDICE** to their ability to refile these claims in state court pursuant to 28 U.S.C. § 1367(c)(3);

5.  The Chinniahs be given thirty (30) days leave to amend to amend their complaint and re-assert their remaining claims in accordance with Rule 8(d)(1) of the Federal Rules of Civil Procedure; and

6.  The matter be remanded to the undersigned for further proceedings.


BY THE COURT:

**Dated:** August 10, 2016

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

GNANA M. CHINNIAH, et al.,

               Plaintiffs,

   v.

EAST PENNSBORO TOWNSHIP, et al.,

               Defendants.

CIVIL ACTION NO. 1:15-CV-02240

(KANE, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 10, 2016**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **August 10, 2016**

                              *s/ Karoline Mehalchick*
                             **KAROLINE MEHALCHICK**
                             **United States Magistrate Judge**