# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

GNANA M. CHINNIAH, et al.,

               Plaintiffs,

    v.

EAST PENNSBORO TOWNSHIP, et al.,

               Defendants.

CIVIL ACTION NO. 1:15-CV-02240

(KANE, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

    This is a *pro se* action for damages asserting federal and state law claims against several Defendants. (Doc. 1; Doc. 92). Currently pending before the Court are four motions to dismiss the amended complaint of Plaintiffs Gnana and Suganthini Chinniah (the "Chinniahs"). (Doc. 94; Doc. 96; Doc. 97; Doc. 99). For the following reasons, it is recommended that each motion be granted.

## I.  BACKGROUND

    The Chinniahs initiated this civil rights action by filing a fee-paid complaint on November 23, 2015. (Doc. 1). In their initial complaint, the Chinniahs asserted violations of their civil rights under the First, Fourth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, conspiracy under 42 U.S.C. § 1985, and numerous state law claims. The initial complaint named the following individuals and entities as Defendants: East Pennsboro Township, Pennsylvania (the "Township"), Township Building Inspector and Code Enforcement Officer Jeffrey S. Shultz, Township Health and Code Enforcement Officer Karen Dunkle, former Township Commissioner and current Cumberland County, Pennsylvania Commissioner James Herzler, and Current Township commissioner John Kuntzelman

(collectively, the "Township Defendants"); attorney Christopher Underhill and Underhill's firm, the Law Offices of Hartman Underhill & Brubaker (collectively, the "Underhill Defendants"); attorneys Joshua Autry and Jeffrey Conrad, along with their firm, the Law Offices of Clymer Musser & Conrad (collectively, the "Clymer Conrad Defendants"); the Cumberland County Tax Claim Bureau (when referred to in conjunction with Herzler in his capacity as a Cumberland County Commissioner, the "County Defendants"); and the Cumberland County Housing and Redevelopment Authorities. Upon service of the initial pleading, all named Defendants except for the Cumberland County Housing and Redevelopment Authorities moved to dismiss the complaint, filing four separate motions.[1] (Doc. 22; Doc. 36; Doc. 40; Doc. 43). After those motions were fully briefed, this Court submitted a Report and Recommendation recommending that the motions to dismiss be granted but that the Chinniahs be given leave to reassert their retaliation, conspiracy, and state law claims in an amended complaint. (Doc. 71). This Court's Recommendation was adopted by the District Court on September 30, 2016. (Doc. 78).

This litigation is the latest in a series of cases in state and federal court involving the Chinniahs. In July of 2008, the Chinniahs brought a 42 U.S.C § 1983 civil rights action against the Township and Shultz alleging that they were the subject of discriminatory enforcement of

---

[1] The Cumberland County Housing and Redevelopment Authorities are no longer a party to this case, having filed a joint stipulation of dismissal signed by the Chinniahs pursuant to Fed. R. Civ. P. 41(a)(1) on May 24, 2016. (Doc. 70).

the Township's zoning laws (the "2008 Lawsuit").[2] (*Chinniah v. E. Pennsboro Twp.*, Case No. 1:08-CV-01330, Doc. 1). The 2008 Lawsuit was tried before a jury with the Chinniahs represented by Attorney Autry of the Law Offices of Clymer Musser & Conrad, and the Township and Shultz represented by Attorney Underhill of the Law Offices of Hartman Underhill & Brubaker. On November 25, 2013, the jury returned a verdict for the Township and Shultz. (*Chinniah v. E. Pennsboro Twp.*, Case No. 1:08-CV-01330, Doc. 255). The Chinniahs terminated counsel and appealed *pro se*. On appeal, the Chinniahs alleged numerous errors, all ultimately rejected by the United States Court of Appeals for the Third Circuit for their "clear lack of merit . . . ." *See Chinniah v. E. Pennsboro Twp.*, 602 F. App'x 558, 559 n.1 (3d Cir. 2015) (not precedential). Thereafter, the Chinniahs attempted to reopen the judgment through a motion pursuant to Federal Rule of Civil Procedure 60(b)(6) on a theory of "virtual abandonment" of their trial counsel, which was subsequently denied and affirmed on appeal. *Chinniah v. E. Pennsboro Twp.*, No. 1:08-CV-01330, 2015 WL 10943685, at *2 (M.D. Pa. July 15, 2015), *aff'd sub nom. Chinniah v. Twp. of E. Pennsboro*, 639 F. App'x 89 (3d Cir. 2015) (not precedential).

---

[2] In addition to the facts pleaded in the Chinniahs' amended complaint, this Court may "also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). Consideration of these materials does not require conversion of a Rule 12(b) motion to dismiss into a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Accordingly, the Court takes judicial notice of the Chinniahs' proceedings before the United States Court of Appeals for the Third Circuit, this Court, the Cumberland County Court of Common Pleas, the Cumberland County Magisterial District Court, and the Township's Board of Health.

In the initial complaint, the Chinniahs alleged many of the same facts set forth in the 2008 Lawsuit. (Doc. 1). They further alleged that the Township Defendants continued their pattern of discrimination after the 2008 Lawsuit was filed and also retaliated against the Chinniahs by condemning their rental unit at 493 State Street, in Enola, Pennsylvania (the "State Street Property"). (Doc. 1, at 11). However, the Township Defendants presented evidence that the condemnation proceedings were only initiated in August of 2015 upon the filing of a complaint with the Township's Department of Housing and Community Development by the Chinniahs' tenant at the State Street Property, due to broken sewer lines causing flooding in her apartment. (Doc. 40-1, at 8-9). Additionally, the Chinniahs claimed— and continue to maintain—that the Underhill Defendants conspired with the Township Defendants in getting the State Street Property condemned, although the only factual allegations made with respect to this conclusory assertion were that Underhill communicated with the Township Defendants about the State Street Property condemnation proceedings even though he was not representing the Township in that particular matter, and that Underhill sent the Chinniahs a demand letter threatening to seek sanctions in response to the Chinniahs' appeal of the denial of their Rule 60(b) motion shortly before the State Street Property condemnation proceedings began. (Doc. 1, at 11-12, 15-16). Furthermore, the Chinniahs alleged that the Clymer Conrad Defendants were also privy to this conspiracy by intentionally providing substandard representation throughout the 2008 Lawsuit due to their longstanding ties with the Underhill Defendants. (Doc. 1, at 7). In support of this assertion, the Chinniahs alleged that Attorney Conrad refused to return legal files and called the police on the Chinniahs when they appeared at Clymer Musser & Conrad's office in October of 2014 looking for the

- 4 -

files. (Doc. 1, at 8). Lastly, the Chinniahs claimed that the Cumberland County Tax Claim Bureau was manipulated by Herzler and Kuntzelman into raising the Chinniahs' tax assessment from $128,000 in 2008 to nearly $290,000, once again in retaliation for the 2008 Lawsuit. (Doc. 1, at 9-10).

The Chinniahs' amended complaint largely repeats the factual assertions from their initial complaint, although many of these assertions pertain to the claims that were already dismissed from the initial complaint with prejudice. (Doc. 92). Although several pages longer than their initial complaint, the Chinniahs's amended complaint primarily consists of more conclusory allegations while only providing additional factual details with respect to certain claims. For instance, the Chinniahs allege that they were referred to Autry by Judge Kane during the pendency of the 2008 Lawsuit and that the Clymer Conrad Defendants still have not returned the Chinniahs' legal files from the 2008 Lawsuit. (Doc. 92, ¶¶ 19, 21, 27).

The Chinniahs also expand on their allegations against Herzler in the amended complaint. They claim that he knew of and participated in the Township's practice of disparately enforcing local codes and ordinances against minority property owners in an effort to keep minority residents out of the Township, and that Herzler also ignored his subpoena and did not appear at trial for the 2008 Lawsuit in order to deprive the Chinniahs of a valuable witness and in retaliation for them filing the 2008 Lawsuit. (Doc. 92, ¶¶ 31-35). The Chinniahs further allege that upon becoming a Cumberland County Commissioner, Herzler continued to retaliate against the Chinniahs for the 2008 Lawsuit by influencing the Cumberland County Housing and Redevelopment Authorities to refuse to pay rent in June and July of 2015 for a

property the Authorities leased from the Chinniahs, and that Herzler also later acquiesced to the condemnation of the State Street Property.[3] (Doc. 92, ¶¶ 37-38).

In addition to Hertlzer, the Chinniahs also expand on their allegations against Kuntzelman. They allege that like Herzler, Kuntzelman ignored his subpoena and did not appear at trial for the 2008 Lawsuit in order to retaliate against the Chinniahs for filing the 2008 Lawsuit, which deprived the Chinniahs of the ability to elicit testimony from Kuntzelman about the Township's discriminatory practices. (Doc. 92, ¶¶ 39-41). The Chinniahs further allege that Herzler and Kuntzelman both were aware of a "stop work" order issued by Shultz in November of 2007 prohibiting the Chinniahs from working on their property, which was enjoined by Judge Oler of the Cumberland County Court of Common Pleas in January of 2008, yet neither Herzler nor Kuntzelman ever reprimanded Shultz for issuing the order. (Doc. 92, ¶ 43).

In regard to the tax assessment issue, the Chinniahs additionally claim that the Cumberland County Tax Claim Bureau began assessing the Chinniahs' property at an inflated amount beginning in 2010 and 2011 around the same time Herzler was served subpoenas to appear for depositions in connection with the 2008 Lawsuit. (Doc. 92, ¶ 47). The Chinniahs allege that the Cumberland County Tax Claim Bureau also arbitrarily separated their tax assessment into three bills from what had been a single bill. (Doc. 92, ¶ 47). The Cumberland County Tax Claim Bureau purportedly raised the tax assessment because Shultz, Herzler, and the Township misinformed the Bureau about the status of the construction on the Chinniahs'

---

[3] These rental payments were purportedly withheld shortly after the Chinniahs filed a Rule 60(b) motion in regard to the 2008 Lawsuit on June 9, 2015. (Doc. 92, ¶ 55).

property in retaliation for the 2008 Lawsuit, despite knowing that no improvements on the Chinniahs' property had been formally approved.[4] (Doc. 92, ¶ 48). The Chinniahs continue to protest the inflated tax assessment, but paid the new assessment under protest after being threatened with a tax sale of their property. (Doc. 92, ¶ 49). Furthermore, the Chinniahs assert that the previous owners of their property, who were not members of a minority group, also developed the property but never had their taxes reassessed or divided into multiple bills. (Doc. 92, ¶ 51).

In regard to the condemnation of the State Street Property, the Chinniahs allege that Dunkle hastily initiated condemnation proceedings without following the designated three-step process for resolving code enforcement issues, which began with providing advance notice to the owners. (Doc. 92, ¶¶ 60-61). The Chinniahs further contend that all Defendants except for the Cumberland County Tax Claim Bureau jointly contrived a basis to have the State Street Property condemned, as the sewer system did not present an ongoing problem. (Doc. 92, ¶¶ 62, 65). Moreover, the Chinniahs assert that even though Dunkle was not named in the 2008 Lawsuit, her actions in regard to the condemnation appear to be in retaliation for the 2008 Lawsuit because she informed Underhill of the condemnation proceedings and not the Health Board's solicitor. (Doc. 92, ¶¶ 64, 68).

---

[4] Although they continue to maintain that Kuntzelman also influenced the Cumberland County Tax Claim Bureau's decision to raise the assessment, the Chinniahs again fail to allege any specific facts as to the role that Kuntzelman purportedly played in the assessment increase. (Doc. 92, ¶¶ 50, 53).

As a final matter, the Chinniahs allege a new act of retaliation on the part of the Township in that they attempted to collect payment on unpaid sewer and trash bills for a vacant property owned by the Chinniahs. (Doc. 92, ¶ 74). The Chinniahs claim that Herzler and/or Kuntzelman were involved in this decision as well, although they provide no facts to establish a basis for their involvement. (Doc. 92, ¶ 74). According to the Chinniahs, the Township had a policy of not charging non-minority owners of vacant properties for sewer and trash bills. (Doc. 92, ¶ 75).

All remaining Defendants filed motions to dismiss the Chinniahs' amended complaint. (Doc. 94; Doc. 96; Doc. 97; Doc. 99). Specifically, the Underhill Defendants filed a motion to dismiss (Doc. 94) and brief in support of their motion (Doc. 95) on November 11, 2016; the County Defendants filed a motion to dismiss (Doc. 97), together with a brief in support of their motion (Doc. 98) on November 14, 2016; the Township Defendants also filed a motion to dismiss on November 14, 2016 (Doc. 96), followed by a supporting brief two weeks later (Doc. 102); and the Clymer Conrad Defendants filed a motion to dismiss (Doc. 99), together with a brief in support thereof (Doc. 100) on November 21, 2016. These motions have been fully briefed and are now ripe for disposition.

## II.  MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643

F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

A document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

III. **DISCUSSION**

A. SECTION 1983 CLAIMS

The Chinniahs assert violations of their constitutional rights under 42 U.S.C. § 1983.

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To state a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). The "under color of state law" element of § 1983 excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). "As the 'under color of state law' requirement is part of the prima facie case for § 1983, the plaintiff bears the burden of proof on that issue." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

1. **Law of the case**

As a preliminary matter, the Court notes that the Chinniahs appear to assert several § 1983 claims in their amended complaint that were previously dismissed from the initial complaint with prejudice. Specifically, the Chinniahs were not granted leave to amend with respect to their access to the court, equal protection, illegal search, and procedural due process

- 10 -

claims. (Doc. 71, at 34; Doc. 78, at 2). Nonetheless, the Chinniahs appear to re-asset each of these claims in their amended complaint. (Doc. 92, ¶ 81 ("The actions and conduct of all the Defendants constitutes retaliation against the Plaintiffs . . . , and interference with their access to the courts, and discrimination against them in violation of their right to equal protection of the laws . . . .)). The Chinniahs are barred from reasserting these causes of action under the "law of the case" doctrine. *See Arizona v. California*, 460 U.S. 605, 618 (1983) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). Accordingly, the Court construes the Chinniahs' amended complaint as asserting § 1983 claims solely for retaliation under the First Amendment.

## 2. First Amendment retaliation claims

The Chinniahs remaining § 1983 claims center on their allegations that all Defendants retaliated against them for filing and litigating the 2008 Lawsuit. "To establish a claim for retaliation contrary to the First Amendment, a plaintiff must show: (1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011). An action amounts to retaliation if the conduct is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart,* 436 F.3d 165, 170 (3d Cir. 2006) (quotation marks and citation omitted).

### a. Underhill Defendants and Clymer Conrad Defendants

With respect to the Underhill Defendants and the Clymer Conrad Defendants, this Court previously found that the § 1983 claims against them failed because they were not state

actors. (Doc. 71, at 7-10). None of the additional allegations in the Chinniahs' amended complaint involve conduct by the Underhill Defendants or the Clymer Conrad Defendants that could fairly be deemed state action. Indeed, the amended complaint contained no new factual allegations concerning the Underhill Defendants. (Doc. 92). Likewise, the only new allegation against the Clymer Conrad Defendants is that they still have not returned the Chinniahs' legal files from the 2008 Lawsuit. (Doc. 92, ¶ 27). "Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999). Here, the Chinniahs' allegations in the amended complaint once again fall squarely within the realm of an attorney's traditional functions. *See Willis v. Carroll Twp.,* No. 07–949, 2008 WL 644762, at *5 (M.D. Pa. Mar. 5, 2008) ("[A]n attorney cannot be held to have conspired with his or her client when the attorney's actions were conducted within the scope of the attorney-client relationship and 'for the benefit of the client rather than for the attorney's sole personal benefit.'" (quoting *Heffernan v. Hunter*, 189 F.3d 405, 411 (3d Cir. 1999))). Accordingly, it is respectfully recommended that the Chinniahs' First Amendment retaliation claims against the Underhill and Clymer Conrad Defendants be dismissed for failure to state a claim.

b. <u>Cumberland County Tax Claim Bureau and the Township</u>

The Chinniahs likewise failed to address the shortcomings in their initial complaint concerning their municipal liability allegations against the Township and the Cumberland County Tax Claim Bureau. A municipality may be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited

pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). Thus, to state a § 1983 claim against a municipality, a plaintiff must allege a constitutional injury that was caused when the municipality took action pursuant to a custom or policy. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *see also Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984) ("A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered.").

Here, although the Chinniahs devote much of their amended complaint to arguing that various actions by the Township and the Cumberland County Tax Claim Bureau evinced a custom of discriminatory behavior towards and disparate treatment of minority residents, they fail to identify any specific custom or policy of retaliation on the part of the municipal Defendants. Given that the Chinniahs' Fourteenth Amendment claims have already been dismissed with prejudice, their remaining allegations fall far short of establishing liability under *Monell* against either the Township or the Cumberland County Tax Claim Bureau with respect to a First Amendment retaliation claim. Accordingly, it is respectfully recommended that the Chinniahs' § 1983 retaliation claims against the Township and the Cumberland County Tax Claim Bureau be dismissed for failure to state a claim.

c.  Dunkle, Herzler, Kuntzelman, and Shultz

The Chinniahs' amended complaint again fails to establish a claim of retaliation against any of the remaining individual Defendants: Dunkle, Herzler, Kuntzelman, and Shultz. As a preliminary matter, the Court notes that the filing of the 2008 Lawsuit was a constitutionally-

protected action. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002). Nonetheless, Kuntzelman, Herzler, and Dunkle were not named as parties to the 2008 Lawsuit. (*Chinniah v. E. Pennsboro Twp.*, Case No. 1:08-CV-01330, Doc. 1). Courts traditionally are weary of retaliation claims against individuals who were not a party to the plaintiff's earlier constitutionally-protected action. *See, e.g., Victor v. Lawler*, No. 3:07-CV-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010) (collecting cases), *aff'd*, 565 F. App'x 126 (3d Cir. 2014); *Evans v. Rozum*, No. CIV.A. 07-2301, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) (holding that because plaintiff's pending lawsuit was not filed against the moving defendants, "there is no apparent reason why [the moving defendants] would want to retaliate against [p]laintiff for filing a lawsuit against others"). Although the fact that Kuntzelman, Herzler, and Dunkle were not parties to the 2008 Lawsuit is not necessarily dispositive of the Chinniahs' retaliation claims against them, it nonetheless factors into the Court's analysis going forward.

Turning to the second element of a retaliation claim, the Chinniahs assert that Dunkle, Herzler, Kuntzelman, and Shultz were involved in a variety of purportedly adverse actions. These actions span the nine years that have elapsed since the Chinniahs filed the 2008 Lawsuit. Specifically, the Chinniahs allege the following acts of retaliation: (1) that Herzler and Kuntzelman failed to appear at trial for the 2008 Lawsuit; (2) that Shultz, Herzler, and the Township misinformed the Cumberland County Tax Claim Bureau about the status of the construction on the Chinniahs' property in 2010 and 2011 in order to get the Bureau to raise the Chinniahs' property tax assessments; (3) that Herzler influenced the Cumberland County Housing and Redevelopment Authorities to refuse to pay rent in June and July of 2015 for a

property the Authorities leased from the Chinniahs shortly after the Chinniahs filed a Rule 60(b) motion in regard to the 2008 Lawsuit on June 9, 2015; (4) that all Defendants except for the Cumberland County Tax Claim Bureau jointly contrived to have the State Street Property condemned; and (5) that Herzler and/or Kuntzelman influenced the Township to attempt to collect payment on unpaid sewer and trash bills for a vacant property owned by the Chinniahs. (Doc. 92, ¶¶ 31-35, 37-41, 47-51, 55, 62, 65, 74). As was the case with their initial complaint, the Chinniahs again list a multitude of alleged retaliatory actions but provide hardly any supporting details. These vague and conclusory allegations do not satisfy the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."); *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) ("Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity."). For instance, the Chinniahs do not explain how Shultz and Herzler purportedly misinformed the Cumberland County Tax Claim Bureau about the status of the construction on the Chinniahs' properties. (Doc. 92, ¶ 48). Likewise, the Chinniahs fail to explain how Herzler influenced the Cumberland County Housing and Redevelopment Authorities to withhold rent from the Chinniahs in June and July of 2015, how Herzler, Kuntzelman, and Shultz had any personal involvement in the condemnation of the State Street Property in August of 2015, and how Herzler and/or Kuntzelman had any role in the Township's decision to collect payment on the Chinniahs' unpaid sewer and trash bills. (Doc. 92, ¶ 37, 55, 62, 65, 74).

Further, some of the conduct alleged by the Chinniahs does not appear to be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee,* 436

F.3d at 170 (quotation marks and citation omitted). As an example, the failure of Herzler and Kuntzelman to appear for trial was insufficiently adverse because the Chinniahs admit that both Defendants had already attended depositions. (Doc. 92, ¶ 53). Accordingly, the Chinniahs categorically failed to provide well-pleaded factual allegations sufficient to establish that Dunkle, Herzler, Kuntzelman, and Shultz engaged in retaliatory conduct that would deter a person of ordinary firmness from exercising his constitutional rights.

Even if the Chinniahs had alleged sufficiently adverse actions, their retaliation claims would still fail because they have not established causation. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 503–04 (3d Cir. 1997); *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920–21 (3d Cir. 1997)). "Courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks, months or years separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation." *Victor v. Huber*, No. 3:12-CV-282, 2012 WL 2564892, at *9 (M.D. Pa. Feb. 28, 2012) (citing *Killen v. N.W. Human Servs., Inc.,* No. 06–4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (seventeen days insufficient to establish causation); *Smith v. ABF Freight Sys., Inc.,* No. 04–2231, 2007 WL 3231969, at *11 (M.D. Pa. Oct. 29, 2007) (one and one-half months insufficient to establish causation).

In the case at bar, Defendants' alleged retaliatory actions all took place years after the Chinniahs initiated the 2008 Lawsuit. The Chinniahs again attempt to overcome the obvious

lack of temporal proximity by pointing to various filings and other case activity as examples of constitutionally-protected conduct that sometimes precipitated Defendants' alleged retaliatory acts. Thus, by the Chinniahs' account, the entire nine-year period since they initiated litigation against the Township counts as one ongoing constitutionally-protected activity and any adverse actions taken by the Defendants during this period must be evidence of retaliation. The Third Circuit has explicitly rejected this contention, warning that "court[s] must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate." *Lauren W.* ex rel. *Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). In light of the Third Circuit's warning, this Court will refrain from second-guessing every decision made by Defendants since the initiation of the 2008 Litigation. *See Mayer v. Gottheiner*, 382 F. Supp. 2d 635, 659–60 (D.N.J. 2005) ("[T]he mere fact [plaintiff] was contesting tickets and filing Notices of Tort Claims does not immunize plaintiff from penalties for violating Borough Ordinances, nor does it automatically give rise to a constitutional violation for any subsequent adverse municipal actions against him."). Given the prolonged length of the 2008 Lawsuit and the other litigation that has followed, the Court finds that the Chinniahs have not established either the temporal proximity or the unusually suggestive pattern of antagonism needed to establish causation.[5] Accordingly, the Court recommends that the Chinniahs' First Amendment retaliation claims each be dismissed for failure to state a claim.

---

[5] The Chinniahs also cannot establish causation with respect to some of Defendants'

## B. Conspiracy Claims

In addition to their § 1983 claims, the Chinniahs also continue to allege an unconstitutional conspiracy in violation of 42 U.S.C. § 1985 against all Defendants. "Unlike its counterpart 42 U.S.C. § 1983, there is no requirement that the deprivation of rights [under § 1985] must occur under color of state law." *Ammlung v. City of Chester*, 355 F. Supp. 1300, 1305 (E.D. Pa. 1973), *aff'd*, 494 F.2d 811 (3d Cir. 1974). Specifically, the Chinniahs allege a conspiracy under § 1985(3). Section 1985(3) "permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)). To state a claim under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters &*

---

alleged adverse actions because retaliatory intent was not the "but for" cause of the action. *See Hartman v. Moore*, 547 U.S. 250, 260 (2006) ("[A]ction colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway."). The Chinniahs' own amended complaint makes clear that retaliatory intent was not the "but for" cause of Shultz, Herzler, and the Township "misinforming" the Cumberland County Tax Claim Bureau about the Chinniahs' property, as the Chinniahs readily admit that they "continued to develop" the properties after purchasing them. (Doc. 92, ¶ 51). Likewise, this Court has taken judicial notice of the hearing proceedings from the Township's Board of Health, which conclusively established that the condemnation of the State Street Property was initiated due to a complaint from the Chinniahs' tenant. (Doc. 40-1, at 8-9).

*Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983). Under this subsection, a plaintiff "must allege 'some racial, *or perhaps otherwise class-based,* invidiously discriminatory animus behind the conspirators' action' in order to state a claim." *Farber*, 440 F.3d at 135 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

"[I]t is a longstanding rule in the Third Circuit that a mere general allegation or averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient to state a claim." *Deangelo v. Brady*, 185 F. App'x. 173, 175 (3d Cir. 2006) (not precedential). Thus, as noted in *Twombly*, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556-57. Instead, "[t]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Coulter v. Ramsden*, 510 F. App'x 100, 103 (3d Cir. 2013) (not precedential). "A plaintiff must make specific factual allegations of combination or understanding among all, or any, of the defendants to plot, plan or conspire to carry out the alleged chain of events. Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose will be deemed sufficient." *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000) (quotations and citations omitted). Moreover, "[t]o constitute a conspiracy, there must be a 'meeting of the minds.'" *Startzell v. City of Phila., Pa.*, 533 F.3d 183, 205 (3rd Cir. 2008); *see also Twombly*, 550 U.S. at 556 (requiring "enough factual matter (taken as true) to suggest that an agreement was made").

In the case at bar, the Chinniahs again fail to allege non-conclusory, well-pleaded factual allegations that Defendants formed a conspiracy to deprive them of their rights sufficient to "raise [their] right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The amended complaint lacks sufficient allegations of an agreement among all, or between any, Defendants, and does not provide a basis for alleging the participation of each Defendant. *See Deangelo*, 185 F. App'x at 175–76; *see also Flanagan v. Shively*, 783 F. Supp. 922, 933 (M.D. Pa. 1992) ("The amended complaint focuses on the conduct of only a few of the twenty-three defendants, and the allegations against them are insufficient to support a plaintiffs' claims of a far-flung conspiracy to deprive him of his constitutional rights."), *aff'd*, 980 F.2d 722 (3d Cir. 1992) (table). Furthermore, the Chinniahs again failed to establish that the Defendants had the requisite intent to deprive the Chinniahs of a constitutional right. *See Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 223–24 (3d Cir. 2015) ("[A] defendant cannot be liable under § 1985 or § 1986 unless the defendant had some awareness of the underlying violation."). Given the lack of specific factual allegations in their amended complaint, it is respectfully recommended that the Chinniahs' § 1985 conspiracy claim be dismissed for failure to state a claim.

## C. State Law Claims

The Chinniahs once again assert several state law claims against the Underhill and Clymer Conrad Defendants. (Doc. 92, ¶¶ 86-98). Where a district court has dismissed all claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision

should be based on "the values of judicial economy, convenience, fairness, and comity . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. As this Court finds nothing in the record to distinguish this case from the ordinary one, the balance of factors "point toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n.7. It is therefore recommended that the Chinniahs' state law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

### D. LEAVE TO AMEND

The Third Circuit has instructed that district courts generally must permit a curative amendment if a complaint is vulnerable to dismissal for failure to state a claim. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). However, "[a] district court properly refuses leave to amend if an amendment would be 'inequitable or futile.'" *Kitko v. Young*, 575 F. App'x 21, 27 (3d Cir. 2014) (not precedential) (quoting *Grayson*, 293 F.3d at 108), *cert. denied*, 135 S. Ct. 1403 (2015). A district court is specifically justified in denying leave to amend upon "[a] plaintiff's 'repeated failure to cure deficiencies by amendments previously allowed . . . .'" *Kitko*, 575 F. App'x at 27 (quoting *Long v. Wilson,* 393 F.3d 390, 400 (3d Cir. 2004)).

Here, the Chinniahs have already been permitted to amend their complaint once. Despite receiving detailed instructions on their pleading deficiencies, the Chinniahs' amended complaint continues to mostly consist of conclusory assertions. Furthermore, the basis for most of the Chinniahs' claims in the amended complaint either were already litigated or could have been raised during their previous lawsuits. Accordingly, this Court finds that granting the

Chinniahs further leave to amend would be both inequitable to the Defendants and futile in light of the Chinniahs' repeated assertions of the same failed claims. It is therefore recommended that the Chinniahs not be granted leave to file a second amended complaint, and that all federal law claims against each Defendant be dismissed with prejudice.

## IV.  RECOMMENDATION

Based on the foregoing, it is recommended that:

1. Each of the Defendants' motions to dismiss (Doc. 94; Doc. 96; Doc. 97; Doc. 99) be **GRANTED**;

2. All federal law claims in the Chinniahs' second amended complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

3. All remaining state law claims be **DISMISSED WITHOUT PREJUDICE** to the Chinniahs' ability to refile these claims in state court pursuant to 28 U.S.C. § 1367(c)(3);

4. Leave to amend be **DENIED**; and

5. The Clerk of Court be directed to **CLOSE** this case.

**BY THE COURT:**

**Dated:** August 14, 2017

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GNANA M. CHINNIAH, et al.,

                Plaintiffs,

    v.

EAST PENNSBORO TOWNSHIP, et al.,

                Defendants.

CIVIL ACTION NO. 1:15-CV-02240

(KANE, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 14, 2017**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **August 14, 2017**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**