**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GNANA M. CHINNIAH and SUGANTHINI CHINNIAH, | : | Civil No. 1:15-CV-02240 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Judge Jennifer P. Wilson |
| | : | |
| EAST PENNSBORO TOWNSHIP, *et al.*, | : | |
| | : | |
| Defendants. | : | Magistrate Judge Karoline Mehalchick |

## MEMORANDUM

Before the court is the report and recommendation of United States Magistrate Judge Karoline Mehalchick recommending that Defendants' motions to dismiss be granted as to Plaintiffs' claims for defamation, civil conspiracy, and intentional interference with legal rights and relations, and denied as to Plaintiffs' claims for breach of contract and request for punitive damages.  (Doc. 142.)  For the reasons that follow, the court declines to adopt the recommendation to deny Defendant's motion to dismiss Plaintiffs' punitive damages claim, but adopts the remaining portions of the recommendation as modified.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Neither party objected to the facts or procedural history stated in the report and recommendation.  Because the court gives "reasoned consideration" to these uncontested portions of the report and recommendation, the court will only restate

the factual background and procedural history necessary for clarity in this opinion.

*E.E.O.C. v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting

*Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)).  Plaintiffs, Gnana and

Suganthini Chinniah ("the Chinniahs"), who are self-represented, initiated this

action in November 2015 against the following individuals and entities: East

Pennsboro Township, Pennsylvania; Township Building Inspector and Code

Enforcement Officer Jeffrey S. Shultz; Township Health and Code Enforcement

Officer Karen Dunkle; former Township Commissioner and current Cumberland

County, Pennsylvania Commissioner James Herzler; Current Township

commissioner John Kuntzelman; attorney Christopher Underhill and Underhill's

firm, the Law Offices of Hartman Underhill & Brubaker (collectively, the

"Underhill Defendants"); attorneys Joshua Autry and Jeffrey Conrad, along with

their firm, the Law Offices of Clymer Musser & Conrad (collectively, the "Clymer

Conrad Defendants"); the Cumberland County Tax Claim Bureau; and the

Cumberland County Housing and Redevelopment Authorities.[1]  (Doc. 1.)  This

initial complaint was subject to four motions to dismiss, Docs. 22, 36, 40, 43, all of

---

[1] The only defendants at issue in the report and recommendation, and accordingly in this memorandum, are the Clymer Conrad Defendants and the Underhill Defendants.

which were granted on September 30, 2016 with leave for the Chinniahs to amend their complaint.[2]  (Docs. 71, 78.)

The Chinniahs filed an amended complaint on October 31, 2016.  (Doc. 92.) This amended complaint was met with four renewed motions to dismiss.  (Docs. 94, 96, 97, 99.)  These motions were granted, and the Chinniahs' case was dismissed with prejudice.[3]  (Docs. 118, 126.)  The Chinniahs appealed this decision to the United States Court of Appeals for the Third Circuit, which affirmed in part, vacated in part, and remanded the case for the court to consider the Chinniahs' state law claims.  (Doc. 132.)  After affording all parties the opportunity for supplemental briefing on the remaining state law claims, Judge Mehalchick issued a report and recommendation on April 13, 2020, limited to the issues presented for the court's supplemental jurisdiction.[4]  (Doc. 142.)

In the report and recommendation, Judge Mehalchick recommends that the Clymer Conrad Defendants' motion to dismiss be granted as to the Chinniahs' claims for defamation, civil conspiracy, and intentional interference with legal

---

[2] Judge Mehalchick issued a report and recommendation suggesting this result on August 10, 2016, which was adopted in full by United States District Court Judge Yvette Kane on September 30, 2016.  (Docs. 71, 78.)

[3] Judge Mehalchick issued a report and recommendation on the Chinniahs' amended complaint, which was adopted in full by Judge Kane on September 29, 2017.  (Docs. 118, 126.)  Because Judge Mehalchick recommended dismissal of the Chinniahs' federal claims, she did not address their remaining state law claims.  (Doc. 142, p. 3.)

[4] No party opted to file supplemental briefs on the pending motions to dismiss.

rights and relations.  (Doc. 142, p. 22.)[5]  In contrast, Judge Mehalchick recommends that the motions be denied as to the Chinniahs' claims for breach of contract and punitive damages.  (*Id.* at 22–23.)  Judge Mehalchick further recommends that the Chinniahs be given 30 days to file a certificate of merit in support of their legal malpractice claim, and 30 days leave to file an amended complaint as to their claims for civil conspiracy and intentional interference with legal rights and relations as a single, stand-alone document without reliance on prior filings.  (*Id.*)  Finally, Judge Mehalchick recommends that the Underhill Defendants' motion to dismiss be denied for failure to brief, and therefore contest, the Chinniahs' civil conspiracy claim either in their motion to dismiss or in the supplemental briefing permitted by the court.  (*Id.* at 3.)

On April 13, 2019, the Underhill Defendants objected to the recommendations relating to the Chinniahs' civil conspiracy claim.  (Doc. 143.)  On April 27, 2020, the Autry Defendants objected to the recommendations regarding the Chinniahs' breach of contract and punitive damages claims.  (Doc. 144.)  On the same day, the Chinniahs objected to the recommendations with respect to their civil conspiracy, interference with legal relations, and defamation claims.  (Doc. 145.)  The Autry Defendants and the Chinniahs timely filed briefs in opposition.  (Docs. 147, 148.)

---

[5] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

## STANDARDS OF REVIEW

### A. Review of Magistrate Judge's Report and Recommendation

When a party objects to a magistrate judge's report and recommendation, the district court is required to conduct a de novo review of the contested portions of the report and recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  The district court may accept, reject, or modify the magistrate judge's report and recommendation in whole or in part.  28 U.S.C. § 636(b)(1).  The district court may also receive further evidence or recommit the matter to the magistrate judge with further instructions.  *Id.*  "Although the standard is de novo, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper."  *Weidman v. Colvin*, 164 F. Supp. 3d 650, 653 (M.D. Pa. 2015) (citing *Rieder v. Apfel*, 115 F. Supp. 2d 496, 499 (M.D. Pa. 2000)).  For the uncontested portions of the report and recommendation, the court affords "reasoned consideration" before adopting it as the decision of this court.  *City of Long Branch*, 866 F.3d at 100 (quoting *Henderson*, 812 F.2d at 878).

### B.  Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting

*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678−79).  To determine whether a complaint

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to

relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

### A. The Uncontested Portions of the Report and Recommendation are Adopted.

The parties do not object to the following opinions and recommendations by

Judge Mehalchick.  Judge Mehalchick recommends that the Clymer Conrad

Defendants' motion to dismiss be granted as to the Chinniahs' claim for legal

malpractice, based on her conclusion that this claim is not barred by collateral

estoppel, but that the Chinniahs' failure to satisfy the certificate of merit

requirement precludes this claim from moving forward in this litigation.  (Doc.

142, pp. 7–14.)  Specifically, Judge Mehalchick found that collateral estoppel does not bar the Chinniahs' legal malpractice claim because, while the essence of this claim was litigated before in 2008, it was analyzed under a different standard of review and burden of persuasion than the present claim before the court.  In other words: "there are stark differences between how the Chinniahs' claim was resolved in the 2008 case and how it would be resolved in this case vis-à-vis the procedures utilized . . . and the burdens of persuasion."  (*Id.* at 8.)  Thus, the Chinniahs' claim for legal malpractice is not barred by collateral estoppel.  (*Id.*)

However, Judge Mehalchick found that the Chinniahs brought their claim for legal malpractice under a tort theory for professional negligence.  (*Id.* at 12.)  Therefore, under Pennsylvania law, the Chinniahs were required to submit a certificate of merit, which was conspicuously absent from any of their filings, and they had not relied upon any exceptions to the requirement.  (*Id.* at 14.)  Due to the absence of a certificate of merit, Judge Mehalchick granted the Clymer Conrad Defendants' motion to dismiss without prejudice to the Chinniahs filing a certificate of merit within 30 days in support of their legal malpractice claim.  (*Id.*)

After giving "reasoned consideration" to the uncontested portions of the report and recommendation, the court finds that Judge Mehalchick's analysis is well-reasoned and fully supported by the record and applicable law.  *See City of*

*Long Branch*, 866 F.3d at 99 (quoting *Henderson*, 812 F.2d at 878).  Thus, the

court will adopt these portions of the report and recommendation in full.[6]

### B. The Court Adopts the Recommendation Granting the Motion to Dismiss the Chinniahs' Claim for Defamation.

In the Clymer Conrad Defendants' motion to dismiss, they argued that the

Chinniahs' defamation claim should be dismissed because Pennsylvania's one-year

statute of limitations has run on this claim.  (Doc. 100, p. 11.)  In response, the

Chinniahs merely restated their claim for defamation, noting that this claim was

grounded upon Defendant Conrad's "false report to the Lancaster Police that

Plaintiff Gnana Chinniah was engaged in criminal activity[.]"  (Doc. 104, p. 13.)

In the report and recommendation, Judge Mehalchick opined:

> Pennsylvania law requires that defamation claims be commenced within one year.  42 Pa. C.S. § 5523(1).  The conduct at issue occurred on October 2, 2014, (Doc. 92, ¶ 26), and Plaintiffs commenced action on November 23, 2015.  (Doc. 1).  Therefore, Plaintiffs' claim of defamation fails to comply with Pennsylvania's statute of limitations and the Court recommends Defendant be GRANTED dismissal on this claim and this claim be DISMISSED WITH PREJUDICE.

---

[6] The court notes that the Chinniahs allege that they are "now seeking the services of a licensed professional to prepare a certificate of merit[,]" but that they "request and reserve the right to seek additional time in which to do so."  (Doc. 145, p. 2.)  To the extent that the Chinniahs may wish to seek an extension of the 30 days in which they have to file a certificate of merit, they must file an appropriate and timely motion with the court.  The court notes that such a motion, if filed, will be carefully scrutinized in light of the fact that the Chinniahs have been on notice that a certificate of merit is required in this case since April 13, 2020, when the report and recommendation was filed.  Moreover, the Chinniahs have noted that they are actively working to satisfy the certificate of merit requirement.  (*See id.*)  Given that some eight months have passed with no certificate of merit filed to date, the court observes that some showing of cause will be required to justify an extension of time beyond the 30 days provided if one is requested.

(Doc. 142, p. 16.)  The Chinniahs object to this conclusion, arguing that the Conrad Defendants were "on [n]otice of the pending filing of their Complaint" and that the statute of limitations should not apply—an argument not raised before Judge Mehalchick.  (Doc. 145, p. 8.)  The Conrad Defendants respond that the Chinniahs failed to cite any authority under Pennsylvania law that provides for a "notice exception to the statute of limitations[,]" and that "such an exception could swallow the rule."  (Doc. 147, p. 2.)

Pennsylvania law is clear that "[t]he statute of limitations for defamation is one year." *Gallucci v. Phillips & Jacobs*, 614 A.2d 284, 287 (Pa. Super. Ct. 1992) (citing 42 PA. CONS. STAT. ANN. § 5523(1)).  Pennsylvania courts have held that "an individual asserting a cause of action [for defamation] is required to . . . institute suit within the applicable statute of limitations." *Id.* (quoting *Hunsicker v. Connor*, 465 A.2d 24, 26 (1983)).  While there is at least one equitable exception to this one-year limitations period, the Chinniahs have not alleged that it is applicable, and the court has found no authority to support a "notice" exception to toll the period of limitations.[7]  Rather, the Chinniahs had a duty to "initiate suit

---

[7] The so-called discovery rule equitably tolls the statute of limitations and provides that: "the statute of limitations does not begin to run 'until the plaintiff has discovered his injury, or, in the exercise of reasonable diligence, should have discovered his injury.'" *Gallucci*, 614 A.2d at 288 (quoting *Corbett v. Weisband*, 551 A.2d 1059, 1068 (1988)).  This rule is applicable where there is an "*inability* of the injured, *despite the exercise of due diligence*, to know of the injury or its cause." *Id.* (quoting *Pocono International Raceway v. Pocono Produce*, 468 A.2d 468, 471 (1983) (emphasis in original)).  The Chinniahs have not alleged that they were unaware of their injury or that they were unable to discover their injury until the statute of limitations ran.

within the applicable statute of limitations[,]" which they have failed to do in this case. *Gallucci*, 614 A.2d at 287.

Moreover, the court notes that the report and recommendation process does not entitle the Chinniahs to a second bite of the apple when they failed to raise and develop arguments before the magistrate judge. *Dowell v. Bayview Loan Servs. LLC*, No. 16-cv-2026, 2017 WL 4230924, at *2 n.1 (M.D. Pa. Sept. 25, 2017) (declining to address arguments not raised before the magistrate judge). Nonetheless, following de novo review, the court agrees with Judge Mehalchick's conclusion, and adopts this portion of the report and recommendation over the Chinniahs' objection.

### C. The Court Adopts the Recommendation Granting the Clymer Conrad Defendants' Motion to Dismiss the Chinniahs' Claim for Civil Conspiracy.

The Clymer Conrad Defendants argued in their motion to dismiss that the Chinniahs' civil conspiracy claim fails because the amended complaint merely contains conclusory allegations, rather than "specific factual allegations of an alleged combination, agreement, or understanding among all, or between any, of the Defendants." (Doc. 100, pp. 12–13.) In response, the Chinniahs argued that

---

Instead, they merely claim that the statute of limitations should not apply to them because they told Defendants to anticipate a lawsuit in which defamation was alleged. This "notice" does not remove the obligation to comply with the statute of limitations and their failure to follow it will result in dismissal of this claim.

the continuous contact between the Defendants sufficiently stated a civil

conspiracy claim.  (Doc. 104, p. 9.)

> Judge Mehalchick subsequently opined that:

> Plaintiffs fail to successfully state a claim of conspiracy because there are no factual allegations which, if true, would show a combination or agreement between Autry and Underhill.  Plaintiffs "believe and aver that [Clymer Conrad Defendants] had a long-standing business and political relationship with [the law firm] in which Defendant Underhill was a principal." (Doc. 92, ¶ 22).  Additionally, "Plaintiffs believe that [Defendant] Autry colluded with Defendant Christopher Underhill by not producing several crucial trial exhibits and requiring the attendance of . . . witnesses." (Doc. 92, ¶ 23).  Both of these allegations, the only allegations which could plausibly give rise to a conspiracy, are conclusory and include no facts which if true would support the existence of a conspiracy.  *See Morrow v. Balaski*, 719 F.3d at 165 (explaining that the court is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation").  There is no submission of a conversation, meeting, or any other mode of combination or agreement.  (Doc. 92, ¶ 23).  In fact, Plaintiff only alleges that Defendant Autry took action by failing to produce trial exhibits and witnesses.  (Doc. 92, ¶ 23).  Besides the conclusory statement, "Autry colluded with [Underhill]," there are no facts averred which would signal an agreement or combination.  (Doc. 92, ¶ 23).

(Doc. 142, pp. 17–18.)  The Chinniahs object to this portion of the report and

recommendation, but merely restate their claim without pointing to additional

allegations in their complaint which would give rise to a claim for civil conspiracy.

(Doc. 145, pp. 2–7.)

To establish a prima facie case of civil conspiracy under Pennsylvania law, a

plaintiff must show: "(1) a combination of two or more persons acting with a

common purpose to do an unlawful act or to do a lawful act by unlawful means or

for an unlawful purpose; (2) an overt act done in pursuance of the common

purpose; and (3) actual legal damage." *Goodwin v. Moyer*, 549 F. Supp. 2d 621,

628 (M.D. Pa. 2006) (quoting *Levin v. Upper Makefield Twp.*, 90 F. App'x 653,

667 (3d Cir. 2004)).  "Proof of malice, i.e., an intent to injure, is essential in proof

of a conspiracy." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa.

1979).  While a conspiracy may be alleged and proven through circumstantial

evidence, such evidence must be "full, clear and satisfactory." *Deitrick v. Costa*,

No. 4:06-cv-1556, 2014 U.S. Dist. LEXIS 183445, at *34 (M.D. Pa. Oct. 16, 2014)

(quoting *Blank & Gottschall Co. v. First Nat'l Bank of Sunbury*, 50 A.2d 218, 220

(Pa. 1947)).  As courts have explained:

> The mere fact that several parties happened to exercise independent
> rights around the same time . . . does not constitute actionable civil
> conspiracy.  Mere suspicion or the possibility of guilty connection is
> not sufficient, nor proof of acts which are equally consistent with
> innocence.  Conscious parallelism does not suffice to establish civil
> conspiracy.

*Deitrick*, 2014 U.S. Dist. LEXIS 183445, at *34 (citations and quotation marks

omitted); *Thompson Coal Co.*, 412 A.2d at 473 ("The mere fact that two or more

persons, each with the right to do a thing, happen to do that thing at the same time

is not by itself an actionable conspiracy.").

In this case, the Chinniahs have merely alleged their belief that the Clymer

Conrad Defendants "had a long-standing business and political relationship with

[the law firm] in which Defendant Underhill was a principal" and that Defendant Autry "colluded with Defendant Christopher Underhill by not producing several crucial trial exhibits and requiring the attendance of . . . witnesses." (Doc. 92, ¶¶ 22–23). These allegations merely indicate the Chinniahs' suspicion regarding these Defendants. There is no evidence that these parties acted with a common purpose to harm the Chinniahs or that these parties ever performed an overt act in furtherance of the alleged conspiracy. Moreover, the purported phone log, which the Chinniahs attach to their objections to the report and recommendation, merely indicates that the Defendants were in contact with each other regarding the Chinniahs' ongoing lawsuit, which is an ordinary and necessary part of litigation. (Doc. 145, pp. 11–12.) As has been explained, "[t]he mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." *Thompson Coal Co.*, 412 A.2d at 473. Quite simply, the Chinniahs fail to establish a prima facie case claim for civil conspiracy. Accordingly, the court agrees with Judge Mehalchick's conclusion, and adopts this portion of the report and recommendation over the Chinniahs' objection.

**D. The Court Adopts the Recommendation Granting the Motion to Dismiss the Chinniahs' Claim for Intentional Interference with Legal Rights and Relations.**

In their motion to dismiss, the Clymer Conrad Defendants argued that the Chinniahs' claim for intentional interference with legal rights and relations fail because the claim "is so deficiently pled that the Clymer Conrad Defendants cannot even be sure that it is, in fact, a claim for relief of some kind." (Doc. 100, pp. 10–11.)  However, Defendants noted that to the extent that the Chinniahs attempted to assert a constitutional violation, they bring claims under 42 U.S.C. § 1983.  (*Id.*)  In response, the Chinniahs clarified that this claim is "for the interference with the Plaintiffs' legal rights and [relations] arising out of their occupation and business."  (Doc. 104, p. 14.)

Judge Mehalchick subsequently opined that:

> Plaintiffs fail to allege the existence of a contractual or prospective contractual relationship between them and a third party, nor to do they allege Defendants' actions were intended to harm a relationship between them and a third party.  (Doc. 92, ¶ 92).  Their allegation is merely that Defendants would not return their legal files and attempted to have them arrested.  (Doc. 92, ¶ 92).  These actions, if true, could show an intent to harm Plaintiffs' business in general, however the Complaint is lacking averments that there was a business relationship between the Plaintiffs and a third party which Defendants intended to harm.

(Doc. 142, p. 19.)  The Chinniahs object to this portion of the report and recommendation, but merely restate their claim without pointing to additional allegations in their complaint which would demonstrate a business relationship

between themselves and a third party that Defendants allegedly attempted to harm. (Doc. 145, pp. 2–3.)  Despite this objection, the Chinniahs appear to agree with Judge Mehalchick's classification of their claim as a cause of action for tortious interference with prospective and existing contractual relations.  (*Id.*)

Under Pennsylvania law, to set forth a claim for tortious interference with contractual relations, a plaintiff must allege that the defendant, "without a privilege to do so, induce[d] or otherwise purposely cause[d] a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another." *Thompson Coal Co.*, 412 A.2d at 470 (quoting Restatement of Torts, § 766 (1939)).  Similarly, to set forth a claim for tortious interference with prospective contractual relations, a plaintiff must allege: "(1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct." *Id.* at 471 (quoting *Glenn v. Point Park College*, 272 A.2d 895, 898 (Pa. 1971)).

Regardless of which theory the Chinniahs attempt to pursue, they have not alleged sufficient facts to support it.  In fact, the amended complaint is devoid of any facts which would demonstrate a contractual or potential contractual relationship with a third party that the Defendants interfered with.  Rather, as Judge

Mehalchick found, the Chinniahs' allegation "is merely that Defendants would not return their legal files and attempted to have them arrested." (Doc. 142, p. 19.) These allegations are insufficient to maintain a claim for either tortious interference with contractual relations or prospective contractual relations. Therefore, the court agrees with Judge Mehalchick's conclusion, and adopts this portion of the report and recommendation over the Chinniahs' objection.

### E. The Court Adopts the Recommendation Denying the Motion to Dismiss the Chinniahs' Claim for Breach of Contract as Modified.

In the report and recommendation, Judge Mehalchick recommended that the Defendants' motion to dismiss should be denied as to the Chinniahs' claim for breach of contract. Specifically, she determined that:

> Plaintiffs allege that Defendant Autry "willfully inflated his invoices contrary to the terms of the retainer agreement that he signed with the Plaintiffs in 2013." (Doc. 92, ¶ 24). Specifically, Plaintiffs submit that Defendant Autry "changed the terms of the Plaintiffs' prior agreement from strict contingency basis, when he took the case . . . and required them to proceed through trial under a strictly hourly fee agreement, thereby removing his incentive to maximize the recovery . . ." (Doc. 92, ¶ 21). This allegation satisfies the requirements necessary to state a claim of breach of contract.

(Doc. 142, p. 15.) The Clymer Conrad Defendants object to this conclusion, arguing that the amended complaint does not contain any allegations regarding the specific terms of the contract that the Chinniahs assert were violated, allegations that these terms were breached, or what damages the Chinniahs are allegedly owed. (Doc. 146, pp. 3–5.) In addition, the Clymer Conrad Defendants claim that

the essence of the breach of contract claim seeks to hold them liable based on another law firm's contract with the Chinniahs, i.e., a contingency fee, rather than the hourly fee that the Clymer Conrad Defendants used.  (*Id.* at 4.)  The Chinniahs respond that the amended complaint indicates that the agreement with Defendant Autry was "unilaterally changed under duress and coercion."[8]  (Doc. 148, p. 1.)

Pennsylvania law requires that a plaintiff pursuing a claim for breach of contract prove: "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages."  *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006); *see McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010).  In this case, it is clear from the face of the amended complaint that "Defendant Autry changed [l]aw firms from Boyle Litigation to Clymer Musser & Conrad."  (Doc. 92, ¶ 18.)  The court gathers that the Chinniahs were represented by Defendant Autry during the early stages of litigation and during trial.  (*See id.* ¶¶ 18–19.)  However, in November 2012, at a pretrial conference, the Chinniahs were proceeding as self-represented litigants. (*Id.* at ¶ 19.)  Thus, it is reasonable to infer that there was a clear break in Defendant Autry's representation of the Chinniahs at some point between the early

---

[8] The court notes that the Chinniahs' amended complaint does not allege claims for duress or coercion, and does not plead facts to support the notion that the Chinniahs were forced to enter into a new contract with Defendant Autry and his new law firm.  Rather, it appears that Judge Kane suggested that the Chinniahs retain new counsel for their trial, and that the Chinniahs chose to enter a new contract with Defendant Autry.  (Doc. 92, ¶¶ 19, 21.)

stages of the 2008 litigation to the trial of the case in 2013, possibly precipitated by Defendant Autry's relocation to a new law firm. (*Id.* ¶¶ 18−20.) The Chinniahs go on to aver that "Defendant Autry changed the terms of the Plaintiffs' prior agreement from strict contingency basis, when he took the case . . . referred by Judge Kane . . . in November 2012, and required them to proceed through trial under a strict hourly fee agreement, thereby removing his incentive to maximize the recovery, and incentivizing him to maximize the hours he spent on the case." (*Id.* ¶ 21.) In addition, the Chinniahs assert that "Defendant Autry also willfully inflated his invoices contrary to the terms of the retainer agreement that he signed with the Plaintiffs in 2013." (*Id.* ¶ 24.)

The court agrees with the Clymer Conrad Defendants that the Chinniahs entered into a new agreement, whereby payment would be assessed on an hourly fee basis. Therefore, to the extent that the Chinniahs assert that the Clymer Conrad Defendants should be bound by the Boyle Litigation's retainer agreement because Defendant Autry happened to work at both law firms during the course of their 2008 litigation, this argument is foreclosed by the facts alleged in the amended complaint. It is clear that the Chinniahs were self-represented litigants at some point during the litigation process. (*Id.* ¶ 19.) Thus, it is also clear that there was a defined break in representation, regardless of the fact that the same attorney happened to represent the Chinniahs on both sides of that break. (*Id.* ¶¶ 18−21.)

The Chinniahs were free to retain a different attorney on a contingency fee basis, or to retain Defendant Autry under the new retainer agreement with an hourly fee assessment.  However, it is clear that the Chinniahs are attempting to retroactively bind the Clymer Conrad Defendants to the Boyle Litigation's retainer agreement. Thus, to the extent alleged, the Chinniahs' claim for breach of contract based on a theory that the Clymer Conrad Defendants were obligated to take the Chinniahs' case on a contingency fee basis will be dismissed.

In contrast, viewing the amended complaint in the light most favorable to the Chinniahs, and recognizing the procedural posture of this case, the court finds that they have asserted a colorable claim for breach of the 2013 contract formed with the Clymer Conrad Defendants.  The court makes these findings in an abundance of caution, noting that the Chinniahs will need to identify the specific term or terms of the 2013 agreement that prevented Defendant Autry from inflating his invoices. Moreover, the Chinniahs will need to prove that Defendant Autry breached these terms.  At best, the amended complaint is scant with respect to these allegations. However, if the Chinniahs' allegation that "Defendant Autry also willfully inflated his invoices contrary to the terms of the retainer agreement that he signed with the Plaintiffs in 2013" is true, then the Chinniahs may succeed on a claim for breach of contract.  Therefore, the court agrees with Judge Mehalchick's conclusion, and

adopts this portion of the report and recommendation as modified over the

objection of the Clymer Conrad Defendants.

### F. The Court Declines to Adopt the Recommendation Denying the Motion to Dismiss the Chinniahs' Claim for Punitive Damages.

In the Clymer Conrad Defendants' motion to dismiss, they argued that

punitive damages are inappropriate in this case because their actions have not risen

to the high level of "outrageous and egregious" conduct that is required for a

punitive damages award.  (Doc. 100, pp. 13–14.)  The Chinniahs responded that

"[p]unitive damages are generally available in a civil rights case," and that the

Defendants' conduct was clearly oppressive and deserving of a punitive damages

award.  (Doc. 104, p. 15.)  Specifically, the Chinniahs suggest that punitive

damages are particularly appropriate, given the Defendants' attempt to have the

Chinniahs arrested for attempting to retrieve their legal files.  (*Id.*)  In the report

and recommendation, Judge Mehalchick opined:

> Defendants' alleged actions giving rise to the legal malpractice claim
> could satisfy the standard necessary to award punitive damages.
> Plaintiffs' allegations that Defendants failed to present important
> exhibits and witnesses at trial, failed to inform them of a potential
> conflict of interest, failed to return to them their legal file, and failed to
> file post-trial motions or timely appeal a district court order, could be
> found to qualify as outrageous conduct. (Doc. 92, ¶¶ 23–26). Further,
> Plaintiffs allege that Defendants' actions were performed with ill
> motive, satisfying the state of mind requirement for punitive damages.
> (Doc. 92, ¶ 25); *see Theise v. Carroll*, 2011 WL 1584448, at *3 (M.D.
> Pa. 2011) (applying Pennsylvania law) (determining that dismissal of
> punitive damages was not warranted when defendants allegedly filed a
> frivolous complaint, failed to file important documents, and took

unauthorized action intentionally, fraudulently, and/or recklessly).  At this juncture, Plaintiffs' allegation that Defendants' conduct was "intentional mistreatment and abuse of the Plaintiffs" is sufficient to allow the request for punitive damages to avoid dismissal. Pa. R. Civ. P. 1019(b) ("Malice, intent, knowledge, and other conditions of mind may be averred generally.").

(Doc. 142, p. 16.)  The Clymer Conrad Defendants object to this conclusion, noting that the only remaining claim is for breach of contract, and arguing that punitive damages are unavailable for breach of contract claims as a matter of law. (Doc. 146, p. 5.)  The Chinniahs respond that Judge Mehalchick's report and recommendation should control since a jury could find the Defendants' conduct "outrageous, and taken intentionally to undermine the Plaintiffs' rights."  (Doc. 148, p. 2.)

It is well established that Pennsylvania law prohibits recovery of punitive damages for breach of contract claims.  *Kinnel v. Mid-Atlantic Mausoleums, Inc.*, 850 F.2d 958, 968 (3d Cir. 1988) ("[U]nder Pennsylvania law[,] a breach of contract cannot result in punitive damages."); *Bruno v. Bozzuto's, Inc.*, 850 F. Supp. 2d 462, 469 (M.D. Pa. 2012); *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 881 (Pa. 2007); *Baker v. Pa. Nat'l Mut. Casualty Ins. Co.*, 536 A.2d 1357, 1361 (Pa. Super. Ct. 1987).  Since a breach of contract claim is all that presently remains in this case, the motion to dismiss the punitive damages claim will be granted.  The Chinniahs will be afforded leave to amend their complaint to include this claim in

the event that the Chinniahs also include claims for legal malpractice accompanied by a certificate of merit as permitted in the report and recommendation.

### G. The Court Adopts the Recommendation Denying the Underhill Defendants' Motion to Dismiss the Chinniahs' Claim for Civil Conspiracy.

In their motion to dismiss, the Underhill Defendants focused their argument and legal discussion on the Chinniahs' civil conspiracy claim under federal law, specifically, 42 U.S.C. § 1985 and the intracorporate conspiracy doctrine. (Doc. 94; Doc. 95, pp. 6–11.)  When given the opportunity to supplement their initial briefing, the Underhill Defendants chose not to avail themselves of this option, choosing instead to rely on the briefing already submitted to the court.  As a result, in the report and recommendation, Judge Mehalchick denied the Underhill Defendants' motion to dismiss, noting that:

> The Underhill Defendants did not brief Plaintiffs' state law claim in their motion to dismiss, (Doc. 95), and did not respond to the Court's order filed May 1, 2019, to supplementally brief remaining state law claims. (Doc. 138).  Therefore Plaintiffs' state law claim against them is not subject to dismissal.  *See Chambers v. Chesapeake Appalachia, L.L.C.*, 359 F. Supp. 3d 268, 274 (M.D. Pa. 2019) (Noting that the party moving to dismiss for failure to state a claim bears the burden of establishing that a plaintiff's complaint fails to state a claim).

(Doc. 142, p. 3–4.)  The Underhill Defendants object to this conclusion, arguing that all "[c]ivil conspiracy claims are state law claims[,]" and that the court "need only determine whether the defendants conspired to violate the law" regardless of

the law or the civil right.[9]  (Doc. 143, p. 5.)  The Underhill Defendants assert that they have fully briefed the Chinniahs' civil conspiracy claim, and that therefore, the court should reach the merits of their motion to dismiss.  (*Id.* at 6.)

Initially, the court notes that the pleadings requirements for civil conspiracy under Pennsylvania law are not the same as those under federal law.  *See Goodwin v. Moyer*, 549 F. Supp. 2d 621, 628 (M.D. Pa. 2006).  Indeed, the applicable legal standards are likewise different.  *See, e.g.*, *Heilimann v. O'Brien*, No. 3:14-cv-1271, 2017 U.S. Dist. LEXIS 31885, at *13 (M.D. Pa. Mar. 7, 2017) (noting that "a plaintiff must establish both the applicability of section 1983 and the Pennsylvania state law elements of a civil conspiracy"); *Luck v. Asbury*, No. 3:12-cv-877, 2013 U.S. Dist. LEXIS 195898, at *9 (M.D. Pa. Aug. 5, 2013) (noting that "the elements of a state law conspiracy claim must be met in order to assert a section 1983 claim"); *Sershen v. Cholish*, No. 3:7-cv-1011, 2007 U.S. Dist. LEXIS 79627, at *50−54 (M.D. Pa. Oct. 26, 2007) (separately discussing and setting forth different standards for civil conspiracy claims under section 1983 and

---

[9] In support of this proposition, the Underhill Defendants only cite to one case from within the Third Circuit, a 1996 case from the Eastern District of Pennsylvania that did not specifically discuss civil conspiracy claims under 42 U.S.C. § 1983 or § 1985—the statutes relied upon by the Chinniahs.  *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 939 F. Supp. 398, 401−02 (E.D. Pa. 1996).  Rather, the *Orthopedic Bone Screw* court noted that "Congress has specifically empowered certain civil plaintiffs with the ability to sue in federal court based on conspiracy. *Id.* at 401 (citing 15 U.S.C. § 1 (The Sherman Act); and 42 U.S.C. § 1985 (Civil Rights Act)).  Thus, the blanket assertion that "[c]ivil conspiracy is a state law claim" is not wholly accurate.  Moreover, the Underhill Defendants devoted their brief specifically to the Chinniahs' federal civil conspiracy claim under 42 U.S.C. § 1985, rather than the standard under Pennsylvania law.

Pennsylvania law); *Goodwin*, 549 F. Supp. 2d at 628 ("The pleading requirements for civil conspiracy under Pennsylvania law are not as stringent as those for a § 1983 conspiracy claim.").

More fundamentally, the court notes that the Underhill Defendants did not raise this argument in the supplemental briefing process provided by Judge Mehalchick. As we have explained, the report and recommendation process does not entitle parties to a second bite of the apple when they fail to raise and develop arguments before the magistrate judge. *Dowell*, 2017 WL 4230924, at *2 n.1 (declining to address arguments not raised before the magistrate judge). Therefore, the court agrees with Judge Mehalchick's conclusion, and adopts this portion of the report and recommendation.

## CONCLUSION

For the reasons stated herein, the court declines to adopt Judge Mehalchick's recommendations regarding Plaintiffs' punitive damages claim, but adopts the remaining recommendations as modified. Accordingly, the court will grant Defendants' motions to dismiss in part and deny the motions in part. An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: January 8, 2021